

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-14-2000

# DiFederico v Rolm Co.

Precedential or Non-Precedential:

Docket 96-1169

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"DiFederico v Rolm Co." (2000). *2000 Decisions.* Paper 7.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/7

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed January 14, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 96-1169

CHERI DiFEDERICO,
        Appellant

v.

ROLM COMPANY; SIEMENS ROLM COMMUNICATIONS,
INC. (formerly Rolm Company); INTERNATIONAL
BUSINESS MACHINES CORPORATION;
SIEMENS CORPORATION

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Civil Action No. 94-cv-06901
(Honorable Ronald L. Buckwalter)

Argued April 26, 1999

Before: SCIRICA, ROTH and McKAY,* Circuit Judges

(Filed January 14, 2000)

PAUL B. BECH, ESQUIRE (ARGUED)
A. RICHARD FELDMAN, ESQUIRE
Bazelon Less & Feldman, P.C.
1515 Market Street – Suite 700
Philadelphia, PA 19102–1907

 Attorneys for Appellant

_____

* The Honorable Monroe G. McKay, United States Circuit Judge for the
Tenth Judicial Circuit, sitting by designation.

        RICHARD M. SOLAZZO, ESQUIRE
          (ARGUED)
        Cummings & Lockwood
        Four Stamford Plaza
        P. O. Box 120
        Stamford, CT 06904-0120

        ROBERT A. NICHOLAS, ESQUIRE
        Reed, Smith, Shaw & McClay
        2500 One Liberty Place
        1650 Market Street
        Philadelphia, PA 19103-7301

         Attorneys for Appellees

OPINION OF THE COURT

McKAY, Circuit Judge.

Plaintiff-Appellant Cheri DiFederico appeals the decision
of the United States District Court for the Eastern District
of Pennsylvania denying her relief under S 510 of the
Employee Retirement Income Security Act [ERISA], 29
U.S.C. S 1140, a provision that makes it unlawful to
interfere with the attainment of rights or benefits associated
with an employee benefit plan.

In her complaint before the district court, Plaintiff alleged
that Defendant-Appellee Rolm Company1 terminated her

_____

1. Plaintiff also included Defendant-Appellee Siemens Rolm
Communications, Inc., as a defendant in her complaint even though the
communications surrounding Plaintiff's termination were exchanged
exclusively between Plaintiff (through herself, her lawyer, and doctors)
and Defendant-Appellee Rolm Company. The record on appeal does not
establish the exact relationship between Rolm Company and Siemens
Rolm Communications, other than a disclosure of corporate affiliation in
Appellees' Brief indicating that Siemens Rolm Communications, Inc., was
"formerly Rolm Company," and an indication on the letterhead of
Plaintiff's termination notice in the record that Rolm Company was an
"IBM and Siemens Company." J.A. at JA117. The district court's
opinions in this case do not clarify why Siemens Rolm Communications
might be liable for interfering with Plaintiff's disability benefits, see

employment to avoid obligations under its short- and long-term sickness and disability plans. The district court granted Defendant partial summary judgment, ruling that the short-term plan was not a qualified plan under ERISA and dismissing all claims arising out of that plan. See DiFederico v. Rolm Co., No. CIV.A.94-CV-6901, 1995 WL 710561, at *2 (E.D. Pa. Nov. 30, 1995). The district court then conducted a bench trial on the remaining issues arising out of the long-term plan.

The testimony and evidence presented to the district court indicate that Plaintiff worked as a sales engineer for Defendant from 1983 to 1990, and as a field salesperson from 1990 to November of 1991. Early in 1991, Plaintiff began developing symptoms of chronic fatigue and chronic colitis which began affecting her job performance until she eventually took short-term sick leave once in July 1991 and again from September 3, 1991, to November 18, 1991, when her employment was terminated. The situation surrounding her termination was, of course, the most hotly contested evidentiary point of the trial. Plaintiff alleged that the correspondence between herself, her doctor, her lawyer, and Defendant and the circumstantial evidence surrounding the exchange of communications lead only to the conclusion that Defendant terminated her employment in an attempt to save money and rid itself of costly long-term disability benefits obligations. Defendant presented evidence to the contrary, arguing that, far from ridding itself of disability obligations, it attempted to accommodate Plaintiff's developing medical condition until it became clear that Plaintiff was not going to accept the accommodations and return to work. In its review of Defendant's evidence, the district court found it "clear . . . that at all times up until November 18, 1991 defendant had an opinion from an independent doctor that plaintiff could return to work with restrictions." DiFederico v. Rolm Co., No. CIV.A.94-6901,

_____

DiFederico v. Rolm Co., No. CIV.A.94-6901, 1996 WL 53808, at *1 (E.D. Pa. Feb. 7, 1996); DiFederico v. Rolm Co., No. CIV.A.94-CV-6901, 1995 WL 710561, at *1 (E.D. Pa. Nov. 30, 1995), but the point appears to be uncontested and insignificant in this appeal. For purposes of this opinion, references to Defendant are meant to include both entities.

1996 WL 53808, at *5 (E.D. Pa. Feb. 7, 1996). The record, according to the district court, showed that before November 11, 1991, Defendant offered Plaintiff a new position with the company--an office job as a sales engineer not requiring travel and situated near restroom facilities for those moments of acute colitis. The record also showed that on November 11, Defendant informed Plaintiff that failure to appear for work at the new position by November 18, 1991, would be considered voluntary resignation. The district court found that notwithstanding Defendant's attempts to accommodate Plaintiff's condition Plaintiff failed to report for work, and, as a result, her employment was terminated on November 18, 1991. See id. at *4.

At the close of the bench trial, the district court held that while Plaintiff established a prima facie case of interference she failed to prove that the legitimate nondiscriminatory reason offered by her employer for her termination was pretextual. See id. at *5. According to the district court, the decision to terminate Plaintiff was not based on an intent to withhold benefits, rather it "was based upon [P]laintiff's failure to report for work even after [D]efendant made a bona fide effort to accommodate her health problems." Id. at *5 n.3.

In this appeal Plaintiff claims that the district court (1) applied an erroneous legal standard to her showing of pretext, (2) erred in requiring her to prove that her employer's intent to interfere was the sole cause of her termination, and (3) erred in finding that she had failed to prove that her employer's reason was pretextual. We exercise jurisdiction under 28 U.S.C. S 1291.

We begin by addressing the question of whether the district court applied an erroneous legal standard to Plaintiff's showing that Defendant's reasons for terminating her were pretextual. We apply a plenary standard when reviewing a district court's application of legal standards to the facts. See FMC Corp. v. United States Dep't of Commerce, 29 F.3d 833, 838 (3d Cir. 1994).

Section 510 of ERISA prohibits " `employers from discharging or harassing their employees in order to keep

4

them from obtaining [employee] benefits.' " DeWitt v. Penn–Del Directory Corp., 106 F.3d 514, 522 (3d Cir. 1997) (quoting Haberern v. Kaupp Vascular Surgeons Ltd., 24 F.3d 1491, 1501 (3d Cir. 1994)). The legal standard in S 510 cases is very clear. To recover, a plaintiff must demonstrate that the defendant had the " `specific intent' " to violate S 510. Id. This requires the plaintiff to show that "the employer made a conscious decision to interfere with the employee's attainment of pension eligibility or additional benefits." Id. at 523 (citing Gavalik v. Continental Can Co., 812 F.2d 834, 860 (3d Cir. 1987)). The plaintiff may use both direct and circumstantial evidence to establish specific intent, but when the plaintiff offers no direct evidence that a violation of S 510 has occurred, the court applies a shifting burdens analysis, similar to that applied in Title VII employment discrimination claims. See Gavalik, 812 F.2d at 851–53 (applying the McDonnell Douglas, 411 U.S. 792, 802 (1973), shifting burdens mechanism). In this burden-shifting analysis, the plaintiff must first establish a prima facie case by showing: "(1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled." Id. at 852. If the plaintiff is successful in demonstrating her prima facie case, the burden then shifts to the defendant-employer, who must articulate a legitimate, nondiscriminatory reason for the prohibited conduct. If the employer carries its burden, the plaintiff then must persuade the court by a preponderance of the evidence that the employer's legitimate reason is pretextual. See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252–53 (1981).

In the case at hand, the district court applied the shifting burdens framework correctly. After Plaintiff established her prima facie case, Defendant articulated a legitimate, nondiscriminatory reason for its adverse employment decision--explaining that it fired Plaintiff for failing to return to work even after it had attempted to accommodate her condition. After Defendant carried its burden, Plaintiff was permitted to present evidence that Defendant's reason was pretextual. Plaintiff produced circumstantial evidence of Defendant's financial difficulties coinciding with her dismissal, but the district court concluded that Plaintiff's

5

evidence was not enough to prove that Defendant's legitimate reason was a pretext. See DiFederico, 1996 WL 53808, at *5. The court explained that to find that Defendant had the specific intent to interfere with Plaintiff's attainment of benefits, Plaintiff would have needed to prove by a preponderance of the evidence that "the reasons offered by defendant . . . [were] not credible." Id. Such evidence would have then supported the inference that "the employer was motivated by an unlawful reason or reasons." Id. But the court concluded, "There [was] simply no objective evidence from which [it could] find defendant's explanation incredible." Id. It reviewed the "particularly . . . truthful and sincere" testimony of Plaintiff's supervisor and reported that "[t]here was not the slightest hint . . . that any decision with respect to [P]laintiff's continued employment was based upon a desire to save the [D]efendant from paying [long-term disability] benefits." Id.

In reference to its conclusion, the court noted, "Unfortunately for plaintiff, there is no `smoking gun[,'] the lack of which is not unusual in cases of this nature." Id. Plaintiff seizes upon this statement as evidence that the court, while ostensibly stating the correct legal standard, actually applied an erroneous legal standard that would require her to present direct evidence of a smoking gun to prove that her employer's reason was pretextual. See Appellant's Reply Br. at 1. It seems to us, however, that the court was simply explaining its application of the circumstantial evidence standard. Cf. Gavalik, 812 F.2d at 852 ("In most cases . . . specific intent to discriminate will not be demonstrated by `smoking gun' evidence. As a result, the evidentiary burden in discrimination cases may also be satisfied by the introduction of circumstantial evidence." The court was merely commenting on an unfortunate reality: Plaintiff could not present any direct evidence of her employer's specific intent to interfere, and the circumstantial evidence she presented in place of direct evidence was not compelling. We cannot conclude that the district court's comments in this regard amounted to the application of an erroneous legal standard.

Alleging another error of law, Plaintiff claims that when the district court required her to prove that Defendant's

proffered legitimate reason was pretextual, it actually required her to prove that Defendant's discriminatory motive was "the sole cause" of her termination. Appellant's Amended Br. at 35. Plaintiff argues that the law only requires her to prove that her employer's intent to interfere " `contributed to' " or was " `a motivating factor in' " the decision to terminate her employment. Id. at 35 (quoting Humphreys v. Bellaire Corp., 966 F.2d 1037, 1043 (6th Cir. 1992)). Her argument seems to confuse several statements of the legal standard applicable in S 510 cases.

While it is true we have stated that "a plaintiff need not prove that `the sole reason for his [or her] termination was to interfere with [employee benefit] rights,' " DeWitt, 106 F.3d at 522 (quoting Gavalik, 812 F.2d at 851), once the defendant articulates and presents evidence of a legitimate, nondiscriminatory reason for its action, the plaintiff must meet its " `ultimate burden of persuasion,' " St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993); see also Gavalik, 812 F.2d at 859, by proving that the defendant discriminated against her. See Miller v. CIGNA Corp., 47 F.3d 586, 597 (3d Cir. 1995) ("[T]he plaintiff's burden is to show that the prohibited consideration played a role in the decisionmaking process and that it had a determinative influence on the outcome of that process.") To satisfy this burden in circumstantial evidence cases like this one, a plaintiff must prove that the legitimate reason proffered by the defendant was pretext for the real discriminatory reason behind the employment action.2 See Burdine, 450 U.S. at 256 (holding that after a defendant sets forth a legitimate reason, the plaintiff must "demonstrate that the proffered reason was not the true reason for the employment decision"). A plaintiff "may succeed in this either directly by persuading the court that the discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of

_____

2. Proving that the legitimate reason was pretext is necessary to establish a discriminatory claim but might not be sufficient. "A finding that the employer's nondiscriminatory explanation is a pretext permits, but does not require, the trier of fact to conclude that the employer discriminated against the plaintiff based on the ground alleged." Miller, 47 F.3d at 596 (citing Hicks, 509 U.S. at 511) (emphasis added).

7

credence." Id. Thus, the analysis of pretext is designed to focus the court's attention on whether the defendant's proffered reason is the real reason. It assumes that if the plaintiff had evidence of other illegitimate motivating factors which contributed to the employment decision, she either would have used that evidence in her attempt to persuade the court that the defendant's legitimate reason was pretext or would have included direct evidence of those motivations in her initial action and circumvented the entire circumstantial evidence inquiry altogether. See, e.g., Gavalik, 812 F.2d at 853 (noting that where the plaintiff's case consists of direct evidence, the McDonnell Douglas–Burdine shifting burdens mechanism is inapplicable).

Plaintiff is correct to point out that the plaintiff of a circumstantial evidence case need not prove that the intent to interfere was the sole reason for the adverse employment decision. Her argument is not necessarily inapplicable to cases applying the circumstantial evidence standard, see, e.g., Miller, 47 F.3d at 597 & n.9 (describing the applicability of a plaintiff-need-not-prove-sole-cause instruction in pretext cases "where the plaintiff's evidence of discrimination is sufficiently `direct' to shift the burden of proof to the employer on the issue of whether the same decision would have been made in the absence of the discriminatory animus"), but the primary focus of the court's analysis in those cases is different. The court is presented with a single legitimate reason proffered by the defendant which the plaintiff is trying to prove pretextual with an argument constructed from the coincidence of a number of circumstances. This is where the pretext analysis is so useful. If the plaintiff proves that her employer's proffered reason was pretext, the court may infer that the employer was in fact motivated by the specific intent to interfere with the attainment of benefits. If, on the other hand, the plaintiff fails to prove that her employer's proffered legitimate reason was pretext, she has not persuaded the court that a discriminatory reason played any role in her termination of employment and it helps her case little to speak of other possibly contributing reasons.3 A

_____

3. While our opinions and the opinions of other circuits do sometimes use terms like "a motivating factor," "contributing factor" and "sole

8

court, like the district court in this case, simply cannot make the unfounded inference that an employer acted with the specific intent to interfere with the plaintiff's attainment of benefits.

The situation presented by this case makes Plaintiff's sole cause argument somewhat beguiling. While it may have appeared that the court was forcing Plaintiff to prove that the discriminatory reason was the sole cause of her termination, the district court in fact did not require Plaintiff to prove that one reason or another was the sole cause of her termination. It merely required her to prove, as part of her ultimate burden of persuasion, that Defendant's proffered legitimate reason was pretext. Cf. Burdine, 450 U.S. at 256 (holding that after a defendant sets forth a legitimate reason, the plaintiff must "demonstrate that the proffered reason was not the true reason for the employment decision"). Plaintiff's sole cause arguments are simply extraneous to our review of the district court's analysis.

Plaintiff's argument that the district court should have applied "a motivating factor" standard to her claim is mistaken as well because she was required to "show that the prohibited consideration played a role in the decisionmaking process and that it had a determinative influence on the outcome of that process." Miller, 47 F.3d at 597 (emphasis added). The circumstantial evidence Plaintiff presented in this case failed to convince the district court that her employer's intent to interfere was even a factor at all in the employment decision. After reviewing the testimony of Plaintiff's supervisor, the district court determined that "[t]here was not the slightest hint . . . that any decision with respect to [P]laintiff's continued employment was based upon a desire to save [D]efendant from paying [the long-term disability] benefits." DiFederico,

_____

reason" to describe and characterize what is or is not an employer's motive, see DeWitt, 106 F.3d at 522; Gavalik, 812 F.2d at 851; Humphreys, 966 F.2d at 1043, we believe it is preferable, in a pretext case analysis, to speak either in terms of "determinative" as the district court did in this case, DiFederico, 1996 WL 53808, at *5; see also Miller, 47 F.3d at 597, or "real reason" as the Supreme Court did in Hicks, 509 U.S. at 511 n.4.

9

1996 WL 53808, at *5. The court simply could notfind any evidence, direct or circumstantial, upon which to make an inference that her employer was motivated in its decision by unlawful reasons. The district court stated:"There has to be more than the coincidence of these two factors (defendant's financial woes and plaintiff's termination) to support an inference that the one came about as a result of the other." Id. at *6. We conclude that the court did not err in allocating the burdens of persuasion and the corresponding legal standards for circumstantial evidence cases.

In her final claim on appeal, Plaintiff argues that the district court erred in finding that her circumstantial evidence did not prove that Defendant's legitimate reason was pretextual. Plaintiff does not appear to challenge whether the district court had an adequate factual basis upon which it could base its ultimate determination that she failed to show pretext. Instead, she contends that the court's "underlying factual findings" themselves were "unsupported by substantial evidence, lacked adequate evidentiary support in the record, were against the clear weight of the evidence, and/or were the product of a misapprehension of the weight of the evidence." Appellant's Amended Br. at 36-37. In other words, Plaintiff asserts not that the district court's ultimate conclusion lacks sufficient factual support but that those factual findings themselves are unfounded. We review a district court's factualfindings for clear error. See Gavalik, 812 F.2d at 850. Under the clearly erroneous standard, however, " `[i]t is the responsibility of an appellate court to accept the ultimate factual determination of the fact-finder unless that determination either (1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data.' " Coalition to Save Our Children v. Board of Educ., 90 F.3d 752, 759 (3d Cir. 1996) (quoting Krasnov v. Dinan, 465 F.2d 1298, 1302 (3d Cir. 1972)).

Plaintiff complains that the district court's findings number 18, 23, 27, 28, 30, 31, 38, 42, and 44 are clearly erroneous. Instead of addressing each of the challenged findings in turn, as briefed by the parties, we can conclude

that the district court's findings involved credibility determinations which are supported by the record and which we will not second-guess. While there may be evidence and inferences to the contrary, we cannot say that the findings are devoid of credible evidentiary support or that they lack a rational relationship to the evidentiary data. Based on our review of the record as a whole, we hold that none of the district court's factual findings are clearly erroneous and we affirm the court's ultimate conclusion.

AFFIRMED.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit