**In re GLOBAL TISSUE, L.L.C., Debtor.**

**Robert F. Troisio, as Liquidating Trustee for the Estate of Global Tissue, L.L.C., Appellant,**

v.

**E.B. Eddy Forest Products Ltd., Appellee.**

**Bankruptcy No. 00–3104–JCA.**

**No. CIV.A.02–1324–JJF.**

United States District Court, D. Delaware.

March 28, 2003.

Joanne B. Wills, Denise S. Kraft, Klehr, Harrison, Harvey, Branzburg & Ellers LLP, Wilmington, DE, Counsel for Appellant.

Christopher P. Simon, Bayard Firm, Wilmington, DE, Counsel for Appellee.

## *OPINION*

FARNAN, District Judge.

Before the Court is an appeal by Robert F. Troisio, as Liquidating Trustee (the "Liquidating Trustee") for the Estate of Global Tissue, L.L.C. (the Debtor") from the Order of the United States Bankruptcy Court for the District of Delaware entered on June 18, 2002 (the "Order"), entering judgment against the Liquidating Trustee and in favor of E.B. Eddy Forest Products Ltd. ("E.B. Eddy") a division of Domtar Industries, Inc. ("Domtar") (collectively "Appellee"). The Bankruptcy Court's Order was issued after a trial on an action initiated by the Liquidating Trustee against Appellee seeking the avoidance and recovery under 11 U.S.C. § 547(b) of three preferential transfers. By his appeal, the Liquidating Trustee contends that the Bankruptcy Court erred, as a matter of both law and fact, when it held that the transfers from the Debtor to Appellee were preferential pursuant to Section 547(b), but that Appellee had produced sufficient evidence showing that the preferential transfers occurred in the "ordinary course" of business between the Debtor and Appellee, such that the transfers were not avoidable under Section 547(c)(2) of the Bankruptcy Code. For the reasons discussed, the Court will affirm the Bankruptcy Court's June 18, 2002 Order entering judgment in favor of Appellee.

## I. The Parties' Contentions

The issue in this case is whether the Bankruptcy Court erred in concluding that the preferential transfers in question were not avoidable pursuant to Section 547(c)(2) of the Bankruptcy Code. The Liquidating Trustee acknowledges that the preferential

transfers were made in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, as required by Section 547(c)(2)(A). However, the Liquidating Trustee contends that Appellee did not establish the remaining two prongs of Section 547, i.e. that the transfers were made in the ordinary course of business or financial affairs of the debtor under 11 U.S.C. § 547(c)(2)(B), and that the transfers were made according to ordinary business terms under 11 U.S.C. § 547(c)(2)(C).

With regard to the second prong of Section 547, the Liquidating Trustee contends that the payment history evidence adduced at trial showed that the Debtor paid the eleven invoices that were the subject of the preferential transfers faster than they chronologically paid their pre-preference period debts. In addition, the Liquidating Trustee contends that E.B. Eddy applied economic pressure to get the Debtor to make these payments, which removes them from the "ordinary course" safe harbor of Section 547(c)(2). Because the Debtor's payments were made faster during the preference period when compared to the pre-preference period and were the result of alleged economic pressure, the Debtor contends that the Bankruptcy Court erred in finding that the payments were made in the Debtor's ordinary course of business.

With regard to the third prong of Section 547, the Liquidating Trustee contends that the Bankruptcy Court erred in finding that the payments made by the Debtor were consistent with payment practices in the industry, such that they constituted "ordinary business terms" under Section 547(c)(2)(C). The Liquidating Trustee contends that Appellee offered no evidence pertaining to industry standards, and therefore, the Bankruptcy Court erred in finding that this element was satisfied.

In response, Appellee contends that the Bankruptcy Court's findings were not clearly erroneous and were based on sufficient evidence in the record. Specifically, Appellee contends that the evidence was sufficient to show a constant pattern of late payments by the Debtor, such that the preferences, which were also paid late, were in the ordinary course of business between the Debtor and Appellee. As for the Liquidating Trustee's argument that E.B. Eddy pressured the Debtor to make the payments by making phone calls to the Debtor, E.B. Eddy contends that the evidence was sufficient to show that this was a common practice by E.B. Eddy and not an unusual or undue collection effort.

As for the question of whether the payments were made pursuant to ordinary business terms of the industry, Appellee maintains that it presented sufficient evidence of the industry standards through the testimony of several witnesses. Based on the correctness of its factual findings, Appellee maintains that the Bankruptcy Court correctly concluded that the preferential transfers were not avoidable.

## II.  Standard of Review

■■■  The Court has jurisdiction to hear an appeal from the Bankruptcy Court pursuant to 28 U.S.C. § 158(a). In undertaking a review of the issues on appeal, the Court applies a clearly erroneous standard to the Bankruptcy Court's findings of fact and a plenary standard to its legal conclusions. *See Am. Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80 (3d Cir.1999). With mixed questions of law and fact, the Court must accept the Bankruptcy Court's finding of "historical or narrative facts unless clearly erroneous, but exercise[s] 'plenary review of the trial court's choice and interpretation of legal precepts and its application of those precepts to the historical facts.' "

*Mellon Bank, N.A. v. Metro Communications, Inc.*, 945 F.2d 635, 642 (3d Cir.1991) (citing *Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 101–02 (3d Cir.1981)). The appellate responsibilities of the Court are further understood by the jurisdiction exercised by the United States Court of Appeals for the Third Circuit, which focuses and reviews the decision of the Bankruptcy Court on a *de novo* basis in the first instance. *In re Telegroup*, 281 F.3d 133, 136 (3d Cir.2002).

## III. DISCUSSION

As a threshold matter, the parties disagree as to the appropriate standard of review. In this case, the Bankruptcy Court's conclusion that the preferences were not avoidable rests on its factual findings that the subject transfers were within the ordinary course of business between the Debtor and E.B. Eddy and pursuant to ordinary terms of the pulp industry. Because these are factual questions, the Court must review the findings of the Bankruptcy Court under the clearly erroneous standard of review. *See In re Fulghum Construction Corp.*, 872 F.2d 739 (6th Cir.1989) (recognizing that courts engage in a factual analysis to determine if a payment was made in the "ordinary course of business"). The conclusions that the Bankruptcy Court drew from its factual findings are then reviewed under the *de novo* standard of review.

Under the clearly erroneous standard of review, "[i]t is the responsibility of an appellate court to accept the ultimate factual determination of the fact-finder unless that determination either (1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data." *DiFederico v. Rolm Co.*, 201 F.3d 200, 208 (3d Cir.

2000) (citations omitted). After reviewing the Bankruptcy Court's findings in light of the record evidence in this case, the Court cannot conclude that the Bankruptcy Court's findings were clearly erroneous. In determining whether payments were made in the ordinary course of a parties' dealings, courts consider such factors as: (1) the length of time the parties engaged in the type of dealing at issue; (2) whether the subject transfer was in an amount more than usually paid; (3) whether the payments were tendered in a manner different than previous payments; (4) whether there appears to be an unusual action by the debtor or creditor to collect on or pay the debt; and (5) whether the creditor did anything to gain an advantage in light of the debtor's deteriorating financial condition. *See e.g. In re Parkline Corp.*, 185 B.R. 164, 169 (Bankr.D.N.J.1994). In this case, sufficient evidence was presented to show that although the Debtors made their payments a bit faster during the preferential period than during the pre-preferential period, the payment rate was still within the normal range of the parties' dealings. (A–1135–1141, 1178–1180). Although E.B. Eddy shipped pulp to the Debtor on net–30 terms, the Debtor never paid E.B. Eddy timely. (A–1135–1141, 1178–1179). That these payments were not extraordinary was supported by the testimony of the Debtor's former vice president of finance, Mr. Schroder, who testified that the payments were not uncommon or unusual when compared to the parties' prior course of dealing. (Schroeder Tr. at 91; A–158–162).

In addition, the record supports the Bankruptcy Court's finding that E.B. Eddy did not apply pressure to the Debtor such that the payments should be taken out of the ordinary course of business. (A–1180). The Debtor paid some of the invoices after E.B. Eddy made telephone calls to obtain payments and the Debtor

sent one check by overnight courier. However, the testimony of Mr. Bennet and Mr. Gohier indicated that it was normal and common business practice for the company to contact customers, including the Debtor, about outstanding invoices. (A–216, 236, 239). Because the Bankruptcy Court's findings are supported by the record, the Court cannot conclude that it clearly erred in finding that the payments made by the Debtor were within the ordinary course of business between the parties.

■ As for the requirement that the payments be made pursuant to ordinary business terms, the Court likewise concludes that the record supports the Bankruptcy Court's findings. "[O]rdinary business terms refers to the range of terms that encompasses the practices in which firms similar in some general way to the creditor in question engage, and that only dealings so [unusual] as to fall outside that broad range should be deemed extraordinary and therefore outside the scope of subsection C." *In re Molded Acoustical Products, Inc.*, 18 F.3d 217, 224 (3d Cir. 1994) (citations omitted). The Liquidating Trustee contends that a creditor "cannot rest on its own history with its own customers to prove an industry standard but must come forward with particularized evidence in the industry which is much broader than its own practices." (D.I. 13 at 16). In support of its position, the Liquidating Trustee relies on *In re Cherrydale Farms*, 2001 WL 1820323 (Bankr.D.Del.2001).

■ In the Court's view, however, the *Cherrydale* decision does not support the Liquidating Trustee's position. In *Cherrydale*, the court considered whether evidence of the industry beyond one's own practice is necessary to establish the ordinary business terms prong of Section 547(c)(2)(C). The court concluded that where the creditor and debtor are in the same industry, evidence beyond the par-

ties' own dealings is not necessary. *Id.* at *6. In this case, Appellee and the Debtor were both in the paper industry at the time of the transfers, and thus, the Court cannot conclude that Appellee was required to present evidence beyond its dealings with the Debtor.

■ In the alternative, even if the Court were to consider which industry standard applied, the *Cherrydale* court recognized that "[t]he emerging legal view is that 547(c)(2)(C) requires objective proof that the disputed payments are 'ordinary' in relation to the prevailing standards in the *creditor's* industry." *Id.* at *6 (emphasis in original). In this case, Appellee presented significant evidence concerning the payment standards in the pulp industry for their other customers. (A–1160–1163, A1142–1153). For example, E.B. Eddy presented evidence that payment ranged from 25.9 days to 54.94 days for all of its pulp customers between 1998 and 2000. (A–240–241, A–285, A–1142–1153). Further, the evidence established that E.B. Eddy and Domtar did not change the terms they extended to the Debtor during the preference period. (A–158, 808–906). Based on this evidence, the Bankruptcy Court found that the it was common for small mills in the pulp industry to run well beyond the thirty-day terms which most sellers of pulp used and that the Debtor's payments to Appellee were within the range of these terms. (A–216, 220–221, 237–239, 241, 1138–1142, 1183–1184). In light of the record, the Court cannot conclude that the Bankruptcy Court's findings were clearly erroneous.

In addition, the Bankruptcy Court further considered the alternative argument concerning the safe harbor under Section 547(c)(2) as articulated by the Third Circuit in *Molded Acoustical.* In *Molded Acoustical,* the court recognized that the longer the pre-solvency relationship be-

tween the debtor and creditor, the more the creditor would be permitted to vary its credit terms from the industry norm while remaining in the safe harbor. 18 F.3d at 225. Applying this principle to the case before it, the court found that the creditor's 18 month relationship with the debtor was "of a sufficiently long duration that the relationship is entitled to some leeway, meaning that we might approve a not insubstantial departure from the established . . . industry norm." *Id.* at 227. In this case, the Bankruptcy Court noted that the duration of the parties' relationship was approximately 15 months, almost the same as the duration of the relationship in *Molded Acoustical.* In addition, the Bankruptcy Court found that the Appellee did not manipulate its credit schedules, did not threaten or initiate legal action and did not engage in any unusual behavior to improve its position as compared with other creditors of the Debtor. (A–217, 1182–1183). Based on this record, the Court cannot conclude that the Bankruptcy Court's finding that the transfers were consistent with ordinary business terms was clearly erroneous.

Because the Bankruptcy Court's findings were not clearly erroneous, the Court further concludes that the conclusion the Bankruptcy Court drew from these findings, i.e. that the preferences were not avoidable under Section 547(c)(2), was correct. Accordingly, the Court will affirm the June 18, 2002 Order of the Bankruptcy Court entering judgment against the Liquidating Trustee and in favor of Appellee.

## IV. CONCLUSION

For the reasons discussed, the Bankruptcy Court's June 18, 2002 Order will be affirmed.

An appropriate Order will be entered.

### ORDER

At Wilmington, this 28th day of March 2003, for the reasons set forth in the Opinion issued this date;

IT IS HEREBY ORDERED that the Order of the United States Bankruptcy Court for the District of Delaware entered on June 18, 2002, entering judgment against the Liquidating Trustee and in favor of E.B. Eddy Forest Products Ltd. a division of Domtar Industries, Inc. is AFFIRMED.