

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-17-2003

# Young v. PA Rural Elec Assn

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-3946

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Young v. PA Rural Elec Assn" (2003). *2003 Decisions.* Paper 103.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/103

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 02-3946

ROBERT F. YOUNG
Appellant

v.

PENNSYLVANIA RURAL ELECTRIC ASSOCIATION; ALLEGHENY
ELECTRIC COOPERATIVE (AEC); FRANK M. BETLEY;
VOLUNTARY RESIGNATION AND SPECIAL EARLY RETIREMENT
PLAN OF PREA AND AEC; BENEFITS COMMITTEE

On Appeal From the United States District Court
For the Middle District of Pennsylvania
(D.C. Civil Action No. 99-cv-01769)
District Judge:  Honorable James F. McClure, Jr.

Argued October 16, 2003

BEFORE:  SLOVITER, ROTH and STAPLETON, <u>Circuit Judges</u>

(Filed  November 17, 2003)

Elliot A. Strokoff (Argued)
Strokoff & Cowden
132 State Street
P.O. Box 11903
Harrisburg, PA  17108
 Attorney for Appellant

James R. Redeker
Caroline M. Austin (Argued)
Wolf, Block, Schorr & Solis-Cohen
1650 Arch Street - 22nd Floor
Philadelphia, PA 19103
  Attorneys for Appellees

_____

OPINION OF THE COURT

_____

STAPLETON, Circuit Judge:

Robert F. Young ("Young") appeals from the District Court's grant of summary judgment in favor of the Pennsylvania Rural Electric Association ("PREA") and others. Young asserts two claims under § 502 and § 510 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, respectively, as well as one claim under Pennsylvania common law and one claim under the Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1 *et seq.* The District Court granted PREA's motion for summary judgment on Young's two ERISA claims and declined to exercise supplemental jurisdiction with respect to Young's two state law claims. We will affirm.

**I.**

PREA is a non-profit association of electric distribution cooperatives in Pennsylvania and New Jersey. Appellee Allegheny Electric Cooperative ("AEC") is an electricity generation and transmission cooperative. PREA provides management services to AEC; all PREA employees have an employment relationship with AEC.

Appellee Frank M. Betley ("Betley") is CEO of PREA. The other Appellees are PREA's Voluntary Resignation and Special Early Retirement Plan ("the Plan") and PREA's Benefits Committee. Young was in-house counsel for PREA.

In early 1997, PREA and AEC procured a management study of PREA in anticipation of the deregulation of electric utilities. Later that year, based upon information that the management study was going to recommend cutbacks in PREA's legal department, Young began looking for a new job outside PREA. In or about September 1997, while still working at PREA, Young was extended an offer to work at the law firm of McQuaide, Blasko, Schwartz, Fleming & Faulkner, Inc. ("McQuaide"). McQuaide offered Young a salary of approximately $28,000.00 less than his salary at PREA.

Young accepted the offer from McQuaide on or before September 29, 1997, but he did not inform anyone at PREA of his new job at that time. Thereafter, Young testified, he had four conversations with his boss, Betley, regarding a severance benefit. On October 9, 1997, Betley told Young and another employee to inform Betley of any employee who was interested in leaving PREA because Betley "could put severance packages together." On October 10, 1997, Young told Betley that he was interested in exploring the option of leaving PREA and obtaining a severance benefit, and Betley responded that he would consider the request. On October 13, 1997, Young again approached Betley about receiving a severance benefit and disclosed that he received an offer from a law firm, but Young did not disclose that he had accepted the offer. Betley

-3-

responded that he did not think it was appropriate to give Young a severance benefit.

The fourth conversation took place on or about October 15, 1997. In that conversation, Betley expressed his belief that Young had already resigned from PREA, and Young replied that he had not yet resigned. Betley responded that it was of no moment whether Young had actually resigned, because Betley could fire him. Young disclosed his acceptance of the McQuaide offer during this conversation, and Betley told Young that if Young went to a law firm, Betley could refer a substantial amount of legal business to him. Young and Betley resolved that Young would remain on the PREA payroll until December 5, 1997, although they agreed that Young's last day in the office would be October 31, 1997.[1] They also agreed that Young could start at McQuaide in November and could still speak at the annual meeting of the Tennessee Electric Cooperative Association in Nashville as a representative of PREA in November. Accordingly, Young authored a letter of resignation on October 21, 1997, indicating that October 31, 1997, would be his last day at PREA. Young attended work at PREA daily through October 31, 1997, and began working full-time at McQuaide on November 3, 1997.

Meanwhile, the results of the management study commissioned by PREA and AEC were announced to PREA's Board of Directors on October 1, 1997, in the form of a

---

[1] Young opted to receive his accrued leave as salary through December 5, 1997, instead of in a lump sum payment, so that he could continue to participate in PREA's travel and dental benefits.

-4-

Transformation Plan. The Transformation Plan recommended that the number of functions at PREA and AEC be reduced but did not discuss a means to reduce PREA's workforce. On October 2, 1997, PREA's and AEC's Board of Directors adopted the Transformation Plan and empowered Betley to implement it "as appropriate in his judgment."

In mid-October 1997, Betley charged Richard W. Osborne ("Osborne") with implementation of the Transformation Plan. On October 23, 1997, Osborne first met with PREA's outside labor counsel to discuss the various options for implementing the Transformation Plan. Osborne thereafter drafted a proposed "reduction in force" plan which provided a severance benefit for employees who opted for voluntary early retirement or who were involuntarily terminated. Osborne submitted this reduction in force plan to management on October 27, 1997. In early November 1997, Osborne altered the draft reduction in force plan to provide a severance benefit for voluntary resignation instead of involuntary termination. Betley submitted this reduction in force plan to PREA's Board of Directors, which approved it on November 12, 1997. The plan, titled "Severance and Special Early Retirement Plan" (the "Severance Plan") was announced to PREA employees and was made effective on November 24, 1997.

Young attended work at PREA on December 4, 1997, the day before his resignation became effective, although he had not done so since October 31, 1997 and had been working full-time at McQuaide since November 3, 1997. On December 4, 1997, Young authored a memorandum to PREA's Benefits Committee seeking benefits

under the Severance Plan.  By letter dated December 9, 1997, the Benefits Committee denied Young's request because Young did not satisfy the definition of "employee" under the terms of the Severance Plan.  *See* Part III, supra.  In a letter dated January 21, 1998, Young appealed from the denial of his request for severance.  Young's appeal was denied by the Benefits Committee on February 10, 1998.

In his complaint initiating this civil action, Young claimed that the PREA Benefits Committee abused its discretion when it denied Young's request for severance benefits under § 502 of ERISA, 29 U.S.C. § 1132.  Young also claimed that PREA violated § 510 of ERISA, 29 U.S.C. § 1140, because Betley caused Young to terminate his employment in order to prevent him from receiving severance benefits.  Young also included a claim under Pennsylvania common law and a claim under the Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1 *et seq*.

PREA moved for summary judgment.  The District Court granted the motion with respect to the two ERISA claims and declined to exercise supplemental jurisdiction with respect to the claims arising under Pennsylvania law.  Young appeals.

## II.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, as an appeal from a final decision of the District Court.  The Court of Appeals has plenary review of a district court's order granting a motion for summary judgment.  *See, e.g.*, *Carter v. McGrady*, 292 F.3d 152, 157 (3d Cir. 2002).  This Court applies the same standard as the District Court and views the underlying facts and all reasonable inferences therefrom in

the light most favorable to the party opposing the motion. *Pennsylvania Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995); *Helen L. v. DiDario*, 46 F.3d 325, 329 (3d Cir.) *cert. denied*, 516 U.S. 813 (1995); *Valhal Corp. v. Sullivan Assocs., Inc.*, 44 F.3d 195, 200 (3d Cir. 1995); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976), *cert. denied*, 429 U.S. 1038 (1977). Under Fed. R. Civ. P. 56(c), the moving party is entitled to summary judgment if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."

## III.

We begin with Young's claim under § 502 of ERISA, 29 U.S.C. § 1132. Young's complaint alleges that the PREA Benefits Committee violated that section by denying Young's request for benefits under the Severance Plan. The parties disagree regarding the standard by which the Committee's decision should be reviewed. *See Pinto v. Reliance Standard Life Ins. Co.*, 214 F.3d 377, 387 (3d Cir. 2000) (discussing standards of review for denial of ERISA plan benefits). The District Court did not resolve the question of which standard applied, concluding instead that, under any potentially applicable standard, the Benefits Committee was justified in its decision. We agree.

The Benefits Committee based its decision to deny Young's request for severance benefits on its determination that Young was not an "employee" as that term is used and defined in the Severance Plan. Section 1.4 of the Severance Plan states:

> An "Employee" means a person who at any time from November 24, 1997 through February 28, 1998, is actively employed by PREA. Specifically excluded are . . . (c) employees who remain on the payroll, however no

longer report to work at PREA on a daily basis.

App. III at 382. The Benefits Committee concluded that Young was not an "employee" under this definition because after October 31, 1997, Young ceased reporting to work at PREA and became a full-time employee at McQuaide. In addition, the Benefits Committee denied Young's request for severance benefits because Young did not resign from PREA in accordance with the requirements set forth in § 2.1 of the Severance Plan – instead, he resigned by letter dated October 21, 1997, one month before the Severance Plan was announced and became effective – and because Young's October 1997 resignation did not fulfill the intent of the Severance Plan, which was to provide benefits to those who voluntarily resigned after the November 1997 effective date of the Severance Plan. Furthermore, the Severance Plan required all resigning employees who sought severance benefits to continue employment with PREA until at least January 6, 1998, which Young did not do.

It is clear that Young was not "actively employed by PREA" during November 24, 1997, through February 28, 1998, as required by the Severance Plan, because Young was not at work on a daily basis during that time. In addition, it is uncontradicted that Young failed to continue employment with PREA until at least January 6, 1998, and that Young did not submit his resignation as required by § 2.1 of the Severance Plan. For these reasons, regardless of whether the proper test is an arbitrary and capricious standard of review or a less deferential one, the Benefits Committee was correct in denying Young's request for severance benefits.

**IV.**

We turn now to Young's claim under § 510 of ERISA, 29 U.S.C. § 1140. Section 510 provides that "It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled. . . ." Young alleges that Betley's actions – threatening to fire Young if he did not resign, and promising to send Young legal work at his new law firm if he did resign – were designed to prevent Young from receiving severance benefits, in violation of § 510 of ERISA.

To prevail on this claim, Young must show "(1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled." *DiFederico v. Rolm Co.*, 201 F.3d 200, 205 (3d Cir. 2000) (citing *Gavalik v. Continental Can Co.*, 812 F.2d 834, 852 (3d Cir. 1987)). We agree with the District Court that Young cannot prove the third element of this claim.

The alleged interfering conduct here occurred on October 15, 1997. Not only was the Severance Plan not in existence at that point but, indeed, a proposal for providing a severance benefit for voluntary resignation had not even been advanced. We are doubtful that § 510 was intended to apply in any situation in which the right interfered with has not yet been created, i.e., where there is no plan in existence.[2] We need not go that far,

---

[2] The consequences of a contrary conclusion would be startling. Any decision made by an executive in the course of formulating a plan would violate § 510 if it narrowed the

however, to resolve this case. As the District Court observed, this was a situation in which "no benefit plan [was] even under consideration" when the alleged interference occurred. We are confident that when Congress used the term "right" it did not intend to include something that was not yet capable of being defined.

## V.

For the foregoing reasons, we will affirm the judgment of the District Court.

---

class of participants who could qualify for a benefit. Any such decision would interfere with a right to which those excluded by the decision might "become entitled."

TO THE CLERK:

        Please file the foregoing not precedential opinion.

                        /s/ Walter K. Stapleton
                        _____
                              Circuit Judge