NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-2514
_____

UNITED STATES OF AMERICA

v.

RAUL M. COTTO-RIVERA,
                              Appellant

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Criminal No. 1-17-cr-00162-001)
District Judge: Honorable Yvette Kane

_____

Submitted Under Third Circuit L.A.R. 34.1(a):
April 3, 2020

_____

Before: GREENAWAY, JR., PORTER, and MATEY,
*Circuit Judges*.

(Filed: April 6, 2020)

_____

OPINION*

_____

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PORTER, *Circuit Judge*.

A jury found Raul Cotto-Rivera guilty of multiple drug-related crimes: (1) one count of conspiracy to distribute (a) between 100 and 1,000 grams of heroin or a heroin mixture or substance and (b) more than 500 grams of cocaine or a cocaine mixture or substance; (2) three counts of distribution of heroin; (3) one count of possession with intent to distribute heroin and cocaine hydrochloride; (4) one count of distribution of marijuana; and (5) one count of possession with intent to distribute cocaine hydrochloride and marijuana.

The District Court sentenced Cotto-Rivera to 262 months' imprisonment for his conspiracy conviction and to a current term of 240 months' imprisonment for the remaining counts.

Cotto-Rivera raises only one issue on appeal. He contends that the District Court clearly erred in calculating the drug quantity attributable to him because its factual findings were based on "unreliable evidence" from "cooperating witnesses." Appellant's Br. at 29. The District Court did not commit clear error when making its factual findings, so we will affirm.

**I**

During its investigation of Cotto-Rivera, law enforcement set up several controlled buys of heroin.[1] The first three controlled buys involved Cotto-Rivera's associates. In

---

[1] A controlled buy occurs when an undercover police officer or informant purchases drugs from a suspect while law enforcement monitors the transaction.

September 2015, Cotto-Rivera sold "a bundle of heroin" to a confidential informant. App. 98. Several more controlled buys of heroin from Cotto-Rivera followed.

Based on these controlled buys, law enforcement executed a search warrant of Cotto-Rivera's home. During the search, officers recovered at least $18,775 in cash, 16.53 grams of marijuana, 2.9 grams of heroin, and 64.92 grams of cocaine and cocaine base. They arrested Cotto-Rivera.

After he was released on bail, Cotto-Rivera again came to law enforcement's attention for possible drug distribution. Law enforcement thus conducted controlled buys of marijuana.

It then received another search warrant for Cotto-Rivera's home. When executing the second search warrant of Cotto-Rivera's residence, law enforcement discovered approximately $4,000 in cash, 28.97 grams of cocaine, 5.37 grams of cocaine base, and 314.9 grams of marijuana.

Based in part on the controlled buys and the searches, the government indicted Cotto-Rivera for numerous drug-related crimes. Cotto-Rivera pleaded not guilty and proceeded to trial.

During trial, two government witnesses testified about the quantity of drugs attributable to Cotto-Rivera. The first witness, Willie McGee, testified that he and an associate named Carlos delivered drugs to Cotto-Rivera "about 20 . . . total" times. App. 262. Because McGee recalled making deliveries about every two weeks, he testified that it was possible that he made twenty-six deliveries to Cotto-Rivera. McGee estimated that in about 85% of the transactions, he delivered both cocaine and heroin to Cotto-Rivera.

3

McGee estimated each delivery contained between two and four ounces of heroin and four and eight ounces of cocaine. In two exceptional cases, he delivered one kilogram of cocaine to Cotto-Rivera. McGee testified that Cotto-Rivera paid Carlos between "[a] couple hundred" and "a thousand" dollars after each delivery. *Id.* at 260.

The second witness, Arturo Torres-Rosales, testified that he knew Carlos (McGee's associate) and that Cotto-Rivera owed Carlos $11,000 for heroin. Torres-Rosales testified that he also saw Cotto-Rivera pay Carlos $9,000 for one-half kilogram of heroin. He further testified that, at the time of this transaction, Cotto-Rivera asked for three-hundred more grams of heroin.

Based in part on this testimony, the jury convicted Cotto-Rivera on seven of the indictment's thirteen charges. During sentencing, the District Court adopted the "conservative" drug quantity calculation from the Presentence Investigation Report ("PSR"). App. 403.

The PSR converted the drug amounts recovered from Cotto-Rivera into a marijuana equivalency of 3,478.95 kilograms. The drug amounts attributable to Cotto-Rivera included 2,049.4 grams of heroin, 7,050.2 grams of cocaine, 340.47 grams of marijuana, and 5.37 grams of crack cocaine. In calculating these drug amounts, the PSR relied on evidence obtained during the controlled buys and related search warrants and on McGee's and Torres-Rosales's testimony. The PSR also relied on a statement given by Carlos Lorenzo-Jimenez that corroborated McGee's and Torres-Rosales's testimony.

## II[2]

When sentencing a defendant for drug-related convictions involving an unknown quantity of drugs, a district court must "approximate the quantity of the controlled substance." U.S.S.G. § 2D1.1 application n.5; *see also United States v. Gibbs*, 190 F.3d 188, 203 (3d Cir. 1999). To approximate drug quantity, a district court may consider "the price generally obtained for the controlled substance, financial or other records, similar transactions in controlled substances by the defendant, and the size or capability of any laboratory involved." U.S.S.G. § 2D1.1 application n.5. When a defendant commits a substantive drug offense—like distribution—and a conspiracy offense, "the total quantity involved shall be aggregated to determine the scale of the offense." *Id.*

A district court's approximation of the drug quantity needs to be supported by only a preponderance of the evidence. *Gibbs*, 190 F.3d at 203 (citation omitted). The evidence "need not be admissible at trial," but it "must possess sufficient indicia of reliability to support its probable accuracy." *Id.* (internal quotation marks and citation omitted).

Cotto-Rivera contends that the District Court's drug-quantity calculation is clearly erroneous because it "based its finding on the unreliable evidence of the government['s] cooperating witnesses." Appellant's Br. at 29. His contention is unavailing.

---

[2] The District Court had subject-matter jurisdiction under 18 U.S.C. § 3231. We have appellate jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). We review the District Court's findings of fact for clear error and its application of the advisory Sentencing Guidelines to the facts for abuse of discretion. *United States v. Kluger*, 722 F.3d 549, 555 (3d Cir. 2013).

The District Court could properly rely on testimony about the weights of drugs that a defendant sold with an associate; and it also could rely on testimony about the average amount of drugs sold and the length of time over which the drugs were sold. *Gibbs*, 190 F.3d at 204. The testimony of McGee and Torres-Rosales each carry further "indicia of reliability to support [their] probable accuracy" because they were presented at trial and subject to cross examination. *See id.* at 203–04. Despite Cotto-Rivera's arguments to the contrary, the witnesses' testimonies are not contradictory and likely result from the witnesses' estimations of the number of drug transactions and the drug quantities from those transactions that occurred years before.

In sum, based on the evidence supporting the District Court's drug-quantity calculation, we are not "left with the definite and firm conviction that a mistake has been committed." *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 622 (1993) (citation omitted). We will therefore accept the District Court's finding of fact because its determination is not "completely devoid of minimum evidentiary support" and "bears [a] rational relationship to the supportive evidentiary data." *DiFederico v. Rolm Co.*, 201 F.3d 200, 208 (3d Cir. 2000) (citations omitted).

\* \* \*

The District Court did not commit clear error when calculating the drug quantity related to Cotto-Rivera's crimes. We will therefore affirm the District Court's judgment imposing Cotto-Rivera's sentence.