NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 19-1854

_____

UNITED STATES OF AMERICA

v.

EDWIN VAQUIZ,

Appellant

_____

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Criminal Action No. 4-16-cr-00310-001)
District Judge: Honorable Matthew W. Brann

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
April 14, 2020

Before: AMBRO, JORDAN and SHWARTZ, Circuit Judges

(Opinion filed: April 22, 2020)

_____

OPINION*

_____

AMBRO, Circuit Judge

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Edwin Vaquiz appeals the District Court's denial of his motion to suppress physical evidence of 280 bags of heroin seized in the search incident to his arrest and its denial of his request for a jury instruction for the lesser-included-offense charge of simple possession under 21 U.S.C. § 844. For the reasons below, we affirm both decisions of the District Court. [1]

## I.

In January 2016, law enforcement for the Borough of Berwick began working with J.F., a confidential informant who, facing charges related to lying on a permit to purchase a firearm, sought to assist the authorities to receive positive consideration for her case. She also had a criminal history that included prior convictions for theft by deception and possession of narcotics. J.F. informed the authorities that she knew a drug user named T.L. who could supply her with heroin; the officers already knew T.L. to be a "middle-man" for drug transactions and, accordingly, thought she could lead them to a source of supply.

On the basis of that information, Detectives Greg Martin, Scott Sienkiewicz, and Brandon Schultz arranged a controlled heroin purchase for January 22, 2016, whereby J.F. would go to T.L.'s residence and give her money the officers had provided in exchange for heroin. The officers searched J.F.'s person and vehicle to ensure that she did not have any contraband or additional money beforehand, and kept her under constant surveillance during the entire transaction. J.F. met T.L. at her residence and gave her the

---

[1] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have appellate jurisdiction under 28 U.S.C. § 1291.

money; they then drove to another residence, which the officers recognized as belonging to Vaquiz (as they had previously arrested him there), in order to obtain the heroin. The officers established multiple lines of sight and Detective Martin saw Vaquiz leaving the residence while Detective Schultz observed him meeting with J.F. and T.L. After the meeting, J.F. dropped T.L. off at her residence and returned to the police station where she handed over five packets of drugs stamped "Black Jack" that field tested positive for heroin.[2] J.F. gave a statement to the officers about the transaction in which she orally confirmed what the officers had observed, and the officers once again searched her person and car, finding no additional contraband.

Several days later, J.F. informed the officers that T.L. had told her that Vaquiz planned to travel to Philadelphia to obtain a new supply of heroin. The officers formed a plan and instructed J.F. to drive Vaquiz to Philadelphia in exchange for heroin. The next day, January 29, 2016, J.F. picked up Vaquiz and drove him, along with T.L., to Philadelphia, stopping at an ATM on the way so that Vaquiz could pick up cash. The officers again searched J.F. beforehand and followed her most of the way to Philadelphia. J.F. later testified that, while in Philadelphia, she witnessed Vaquiz meet with a supplier who provided him with two packages—one large, one small. Officer Schultz was in communication with J.F. the entire time and told her to text him when they were ten minutes away from Berwick and, when they arrived, to park at a certain gas station and enter the store. J.F. did as instructed, and officers swarmed the vehicle, removing Vaquiz

---

[2] A later lab test revealed the packets contained fentanyl, another opioid controlled substance, instead of heroin.

and T.L. from the car and placing Vaquiz under arrest. Officer Schultz then conducted a search incident to arrest and seized a wrapped package containing 280 bags of suspected heroin; he then located 28 additional bags beneath the back seat next to where Vaquiz was sitting. Officer Martin testified that they arrested Vaquiz based on everything they had personally observed along with everything J.F. had told them, namely that 1) Vaquiz had distributed heroin to T.L. on January 22, 2016, and 2) Vaquiz had obtained and was in possession of heroin at the time of his arrest.

A grand jury indicted Vaquiz on two counts for distribution of a controlled substance and possession with intent to distribute, both in violation of 21 U.S.C. § 841(a)(1). Vaquiz thereafter filed a motion to suppress the 280 bags of heroin seized during the search incident to arrest on January 29, 2016, arguing that the officers lacked probable cause to arrest, and thus to search, him. He contended that probable cause was lacking because it was premised on information learned from an informant that was unreliable and suspect. After holding a hearing, in which Detective Martin and J.F. testified, and receiving pre-and post-hearing briefing, the District Court denied the motion, finding that "the factual record demonstrates that J.F. proved her reliability on numerous occasions and that the information provided by her was often independently corroborated by the officers in th[e] case." App. 18.

Vaquiz proceeded to trial in July 2018. His primary defense was that while he possessed heroin, it was for personal use, not for sale. During the charge conference, he requested a jury instruction for the lesser included offense of simple possession under 21

U.S.C. § 844.  The District Court denied the request.  The jury issued a guilty verdict for possession with intent to distribute heroin (Count II).  Vaquiz now appeals.

## II.

### A.     Motion to Suppress

Vaquiz argues that the District Court erred in denying the suppression motion because the officers lacked probable cause to arrest him, and thus lacked authority to search his vehicle incident to the arrest.  We review the denial of his "motion to suppress evidence for 'clear error as to the underlying facts, but exercise plenary review'" over the legal issues in light of the facts properly found.  *United States v. Silveus*, 542 F.3d 993, 999 (3d Cir. 2008) (quoting *United States v. Riddick*, 156 F.3d 505, 509 (3d Cir. 1998)).  Under the clearly erroneous standard, we must "'accept the ultimate factual determination of the fact-finder unless that determination either (1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data.'"  *DiFederico v. Rolm Co.*, 201 F.3d 200, 208 (3d Cir. 2000) (citation omitted).

A warrantless arrest is permissible provided there exists "probable cause to believe that a criminal offense has been or is being committed."  *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004).  The existence of probable cause "depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest."  *Id.*  When the probable cause determination involves statements from a confidential informant, those statements form part of the totality-of-the-circumstances analysis.  *Illinois v. Gates*, 462 U.S. 213, 230 (1983).  "[I]n making a warrantless arrest an

officer 'may rely upon information received through an informant, rather than upon his direct observations, so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge.'" *Id.* at 242 (citation omitted).

The District Court here found that probable cause to arrest Vaquiz rested on several factors: the information provided by J.F., the January 22 controlled buy, and the January 29 controlled buy. Vaquiz contends that probable cause was lacking because, to the extent it was based on the information J.F. supplied, it was unreliable as she had been convicted of several crimes for lying. The District Court acknowledged the reliability issue with J.F., but properly discounted it considering that J.F. had proven her reliability on several occasions and the information she provided was independently corroborated by the officers based on their observations and prior knowledge.

As to reliability, Detective Martin testified that he had previously interviewed J.F. "[h]alf a dozen to a dozen" times and found her reliable and "forthcoming;" he also testified that she had never lied to him. App. 131. Further, prior to and after each controlled purchase, the officers "test[ed]" J.F.'s honesty by searching her person and vehicle for any additional contraband or money and found none. App. 127.

The Court also found that the officers independently corroborated the information J.F. supplied; for example, when J.F. told them she could buy heroin from "middle man" T.L. and lead them to a supplier, that information was corroborated by the officers' own knowledge that T.L. was a well-known "middle man." During the January 22 controlled buy, the officers followed J.F. to a residence that they recognized as belonging to Vaquiz and personally observed the transaction in which T.L. gave Vaquiz money in return for

6

packets later confirmed to contain a controlled substance. When J.F. came to the officers with information that Vaquiz was planning to go to Philadelphia on January 29 to purchase an additional supply of heroin, the officers independently corroborated J.F.'s information through their own surveillance. Moreover, J.F. was in communication with Officer Schultz the entire time and did exactly as instructed.

Thus the Court did not clearly err in finding that the officers—considering the information provided by J.F., their own independent knowledge of Vaquiz as having a history of drug arrests, and their own independent observations of Vaquiz's actions from both the January 22 and January 29 controlled buys—had probable cause to believe that Vaquiz had committed or was committing a drug offense at the time of his arrest.[3]

### B. Jury Instruction Request

Vaquiz contends that it was error not to instruct the jury on the lesser-included offense of simple possession because there was sufficient record evidence to support a conviction for possession as well as possession with intent to deliver, and thus this failure to instruct unfairly deprived him of his primary defensive theory—that he possessed the heroin but never meant to distribute it. We review a district court's refusal to give a particular jury instruction for abuse of discretion. *United States v. Petersen*, 622 F.3d 196, 207 n.7 (3d Cir. 2010).

---

[3] To the extent Vaquiz challenges the District Court's reliance on Detective Martin's testimony, which contained hearsay based on Detective Schultz's statements, a district court may rely on hearsay evidence during a suppression hearing. *See United States v. Raddatz*, 447 U.S. 667, 679 (1980) ("At a suppression hearing, the court may rely on hearsay and other evidence, even though that evidence would not be admissible at trial."). To the extent Vaquiz challenges the credibility of Detective Schultz, there was nothing to indicate to the District Court that Schultz was anything but credible in this case.

Simple possession of a controlled substance, as defined by 21 U.S.C. § 844(a), is a lesser-included offense of possession with intent to distribute the same controlled substance. *United States v. Lacy*, 446 F.3d 448, 454 (3d Cir. 2006). Importantly, "[a] jury instruction must contain a lesser-included offense only if the evidence adduced at trial could support a guilty verdict on either charge." *Gov't of Virgin Islands v. Knight*, 989 F.2d 619, 632 (3d Cir. 1993). Thus, Vaquiz was entitled to a simple possession charge only if a rational jury could find that he did not intend to distribute the heroin. *Cf. id.* ("Therefore, Knight was entitled to an involuntary manslaughter charge only if a jury rationally could find that he was not committing a felony at the time the gun discharged.").

Despite his personal-use theory, the trial record shows insufficient evidence to support a conviction for mere simple possession under 21 U.S.C § 844(a). Both J.F. and T.L testified that Vaquiz was not a heroin user, that he regularly sold heroin, and that he was the only one in possession of the heroin recovered from the January 29 controlled buy. The record shows that the amount of heroin recovered from Vaquiz (280 bags on his person and 28 bags next to where he was sitting), and the way it was packaged (in small bags for individual resale), are consistent with "strict[] distribution" and "drug dealer quantity," not "personal consumption." Supp. App. 513–15, 528–29. The only evidence that Vaquiz may have been a user came from Detective Martin's prior inconsistent statement at the suppression hearing that Vaquiz was a "user" of heroin. But at trial Martin denied any personal knowledge that Vaquiz was a user and stated that his previous statement was a "mistake." Supp. App. 448–49. Moreover, even under his own

8

theory, Vaquiz's possession of the heroin and his intent to distribute it to the others would defeat his argument for a simple possession instruction. Thus the District Court did not abuse its discretion in denying Vaquiz's request for the lesser-included-offense instruction.

*   *   *   *   *

We affirm the ruling of the District Court.