898 F.2d 385
 133 L.R.R.M. (BNA) 2891, 114 Lab.Cas. P 12,031,
12 Employee Benefits Ca 1175
 Douglas HENDRICKS, Appellant,
v.
EDGEWATER STEEL COMPANY, a subsidiary or division of
Edgewater Corporation, a corporation; United Steelworkers
of America, an unincorporated labor organization; and Local
Union No. 1246, United Steelworkers of America, an
unincorporated labor organization.
 No. 89-3488.
 United States Court of Appeals,
Third Circuit.
 Submitted Under Third Circuit Rule 12(6)
 Feb. 1, 1990.
Decided March 14, 1990.
 
 Lloyd F. Engle, Jr., Lyn C. Ackerman, Kuhn, Engle and Stein, Pittsburgh, Pa., for appellant.
 Joseph Mack, III, Kurt A. Miller, Thorp, Reed and Armstrong, Pittsburgh, Pa., for appellee-Edgewater Steel Co.
 Richard J. Brean, Asst. Gen. Counsel, United Steelworkers of America, Pittsburgh, Pa., for appellees--United Steelworkers of America and Local Union No. 1246, United Steelworkers of America.
 Before STAPLETON and MANSMANN, Circuit Judges, and ACKERMAN, District Judge.*
 OPINION OF THE COURT
 MANSMANN, Circuit Judge.
 
 
 1
 In this appeal from a grant of summary judgment for the union and an adjudication for the employer, we are faced with the question of whether the district court erred by determining that there existed no question of material fact to support the employee's claim that the union had breached its duty of fair representation pursuant to Sec. 301, or that the company had violated Sec. 510 of the Employee Retirement Income Security Act ("ERISA"), Pub.L. 93-406, 88 Stat. 832 (1974), codified at 29 U.S.C.A. Sec. 1140 (West 1985) by terminating his employment in order to deprive him of a pension. Because we conclude that the district court properly decided that Hendricks had failed to present a prima facie case in the fair representation claim, and that he had failed to meet his burden of persuasion in the ERISA claim, we will affirm the judgments of the district court.
 
 I.
 
 2
 Douglas Hendricks was hired by the Edgewater Steel Company in 1975 and became a member of the United Steelworkers of America International as well as Local 1246. Hendricks moved through different positions in the company as he gained experience and seniority until he reached the level of pendant crane operator ("hooker"). He was injured in an automobile accident in March, 1982 and was placed on disability until March 20, 1984, when the company's physician approved his return to work. Hendricks' disability was treated the same as a lay-off. Consequently, under Section 10 of the Collective Bargaining Agreement, he continued to accrue seniority for two years as well as retaining the seniority for an additional three years. In order to avoid a break in service after an absence of two years, the employee is required to give the company notice in writing that he intends to return to work when called. When Hendricks returned to work after his disability ended in March, 1984, he was notified that there was no work available and he was placed on lay-off status.
 
 
 3
 On June 1, 1984, the company notified Hendricks by way of a form letter that pursuant to Section 10, subparagraph A(1)(d) he must send, within 30 days of the anniversary date of his lay-off, written notice of his intention to return to work when called. Hendricks noted that the letter had been sent to him two months after his anniversary date of March 26, 1984, and called Russell LaBella, Director of Labor Relations, to determine what he was to do in order to preserve his seniority. LaBella instructed Hendricks to "follow the letter". Hendricks complained that the company had failed to include an addendum to the notification which would have explained the delay and assured Hendricks that he had a month within which to respond to the notification. Uncertain as to what he was to do, Hendricks did not respond to the June 1, 1984 letter. When the anniversary of his lay-off date arrived in 1985, Hendricks knew he was to send a letter, pursuant to the requirements of A(1)(d), notifying the company of his intention to return to work when called. He wrote the letter April 11, 1985.
 
 
 4
 Hendricks stated that he would occasionally stop by the plant to observe the work schedules to see if he had been recalled to work. In September, 1985, when it became apparent that less senior employees were called to work, Hendricks called LaBella and was informed that he, Hendricks, had been terminated from employment in 1984 for failing to send the requisite notice. Hendricks alleges that neither he nor the union received notice of the termination. After learning of his termination, Hendricks promptly called William Cassol, Vice-President of Local 1246 and Chairman of the Grievance Committee, to notify Cassol of this wrongful termination. Hendricks did not, however, file a formal written grievance as required by the collective bargaining agreement. Cassol met with LaBella and discussed Hendricks' situation. LaBella explained that Hendricks had been terminated because he had failed to send timely notice of his intent to return to work when called. Cassol explained that Hendricks denied receiving the addendum. LaBella assured Cassol that, although the company had made some mistakes in sending out the notices late, he was certain that the addendum had been included.
 
 
 5
 After meeting with LaBella, Cassol discussed Hendricks' case with Steelworkers' staff representative Jack McGrogan. They determined that if the union went through the grievance procedure to arbitration they would lose. Thus, Cassol notified Hendricks of the outcome of his investigation and discussions with LaBella and McGrogan. When Hendricks inquired as to what else could be done, Cassol ostensibly replied, "Forget about it."
 
 
 6
 Hendricks brought suit in the District Court for the Western District of Pennsylvania alleging that the company had violated Sec. 510 of ERISA, 29 U.S.C.A. Sec. 1140, and that the union had breached its duty of fair representation as required by Sec. 301, 29 U.S.C.A. Sec. 185 (West 1978). The district court granted summary judgment for the union and the company on Hendricks' Sec. 301 claim but denied the company's motion for summary judgment on the Sec. 510 ERISA claim. The district court concluded that Hendricks had failed to follow the mandatory grievance procedures outlined in the collective bargaining agreement, and therefore, was barred from bringing suit. The Sec. 510 claim proceeded to a non-jury trial and the district court entered an adjudication on May 8, 1989 entering judgment for the company in Hendricks' Sec. 510 claim. Ten days later, Hendricks filed a Rule 52 motion to amend, modify or add to the May 8 decision. The district court denied this motion on June 14, 1989. Hendricks timely filed his notice of appeal from the denial of the Rule 52 motion, the May 8 adjudication and the order granting summary judgment.
 
 
 7
 Our review of the district court's order granting summary judgment is plenary since it involves a determination of whether, as a matter of law, the non-moving party has failed to present a genuine issue "of material fact, and if not, whether the moving party is entitled to judgment as a matter of law." Little v. MGIC Indemnity Corporation, 836 F.2d 789, 792 (3d Cir.1987). We have plenary review of the district court's conclusions of law in the ERISA case; as to the district court's findings of fact in the resolution of the case against the company, we can reverse only if we conclude that the determination was clearly erroneous. See Bellissimo v. Westinghouse Electric Corp., 764 F.2d 175 (3d Cir.1985), cert. denied, 475 U.S. 1035, 106 S.Ct. 1244, 89 L.Ed.2d 353 (1986).
 
 II.
 
 8
 Hendricks contends that the district court erred by granting summary judgment to the union and the company on the breach of fair representation claim because he falls into one of the exceptions to the requirement of exhaustion of union remedies.[1] While it is well settled law that in order to bring a successful suit alleging breach of a labor contract, an employee must exhaust the procedures in the collective bargaining agreement when that agreement governs the manner in which an employee's rights are to be enforced, Griesmann v. Chemical Leaman Tank Lines, Inc., 776 F.2d 66 (3d Cir.1985), the employee may be excused from this requirement where resorting to the grievance procedure would be futile, where the employer repudiated the collective bargaining agreement, or where the union breached its duty of fair representation, i.e., arbitrarily refusing or perfunctorily handling the grievance. Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). See also Smith v. Pittsburgh Gage & Supply Co., 464 F.2d 870 (3d Cir.1972) ("when resort to arbitration would be futile, the employees need not exhaust the arbitration procedures before seeking relief in the courts.") The right to bring suit against the union for breach of fair representation was a judicially created right to avoid unions being conferred "unlimited discretion to deprive injured employees of all remedies for breach of contract." Vaca, 386 U.S. at 186, 87 S.Ct. at 914 (dicta). However, a "breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." Vaca, 386 U.S. at 190, 87 S.Ct. at 917.
 
 
 9
 Hendricks argues that he falls within the futility exception to the generally required exhaustion of union remedies prior to resort to the courts because the statement made by the union's grievance officer to "forget about it" indicated that the union was not going to pursue the matter and that it would be futile for Hendricks to continue to press it. He further claims that no one suggested he submit a written grievance to the union. The district court determined that Hendricks was familiar with the grievance procedures--indeed, he admitted that he had carried another grievance through to the fourth step--and knew how to submit the written form. Consequently, the district court concluded that a finder of fact, after hearing the circumstances of Mr. LaBella's conversations with the union officials, could not find that the filing of a written grievance would be futile or that the union would not process the grievance. Therefore, without a finding that Hendricks' situation could fall within one of the three exceptions to the exhaustion requirement, his suit is barred by his failure to follow the mandatory grievance procedures.[2] See Vaca v. Sipes, 386 U.S. at 185-86, 87 S.Ct. at 914-15.
 
 
 10
 Hendricks relies on Goclowski v. Penn Cent. Trans. Co., 571 F.2d 747 (3d Cir.1978) where we said that summary judgment could not be granted on grounds of failure to exhaust remedies since sufficient facts were set forth to prove either that plaintiff had done all that was possible within union appeal procedures or that he could be excused from pursuing the union remedies to exhaustion because the union has disclosed that its decision has become fixed. 571 F.2d at 758. We find Goclowski to be distinguishable from the case here. In Goclowski, plaintiff union members had met with members of the International and Local union numerous times attempting to resolve a seniority issue in the collective bargaining agreement but the union maintained a fixed stand despite obvious disapproval of the members. 571 F.2d at 758. Here, Hendricks made one telephone call to his union officer and waited for the result of the investigation. When the response came back that the company had supplied grounds for his termination and that he might as well "forget about it", Hendricks did exactly that, without attempting to file a written grievance as required by step two of the mandatory grievance procedures. This factual situation does not rise to the level of frustration or futility which must have been felt by the membership in Goclowski.
 
 
 11
 We conclude, as did the district court, that Hendricks has failed to present sufficient evidence from which a trier of fact could find that the union had perfunctorily dismissed his grievance, discriminated against Hendricks or arbitrarily refused to investigate his grievance. Therefore, since no genuine issue of material fact remained in the Sec. 301, 29 U.S.C. Sec. 185 claim against the union and the company, we will affirm the judgment entered by the district court for the defendants.
 
 III.
 
 12
 Hendricks' second claim alleged that the company had violated Sec. 510 of ERISA, 29 U.S.C. Sec. 1140, by terminating his employment when his pension was just eleven months short of vesting. Section 510 states:
 
 
 13
 It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan....
 
 
 14
 29 U.S.C.A. Sec. 1140. We have stated that in order to make out "a prima facie case under ERISA Sec. 510, an employee must demonstrate (1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled." Gavalik v. Continental Can Co., 812 F.2d 834, 852 (3d Cir.1987). Thus, the employee must establish a specific intent on the part of the employer to interfere with the attainment of pension eligibility. Id. at 851-52. We are well aware that in most cases the specific intent to discriminate against those nearing pension eligibility will not be demonstrated by direct evidence. Drawing on the caselaw dealing with other aspects of employment discrimination, see e.g., McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), we concluded that specific intent can, however, be shown by circumstantial evidence. 812 F.2d at 852. Once the prima facie case has been established by a preponderance of the evidence, the burden shifts to the employer--here, the company--to show a legitimate, nondiscriminatory reason for the termination. Gavalik, 812 F.2d at 853. If the company articulates a legitimate reason, the burden is on the employee to show that the reason was pretextual. Id.
 
 
 15
 After presentation of all the evidence, the district court concluded that Hendricks had failed to meet his burden of persuasion of intent to discriminate.[3] Hendricks argues that he produced evidence that the pension plan was funded solely by the company, that the plan provided for a ten year vesting requirement and forfeiture of all benefits by participants who did not vest prior to termination, that he was eleven months short of vesting and that the company was reducing costs. This evidence does not meet the Gavalik standard, i.e., a specific intent on the part of the employer to interfere with the attainment of pension eligibility.
 
 
 16
 Hendricks also claims he was discriminated against because the company called back another employee for only a week in order to preserve the individual's pension by avoiding a break in service. Hendricks misunderstands the situation. He was terminated in 1984 after failing to respond to the letter by indicating his intent, in writing, to return to work when called. Although the break in service occurred July 31, 1984, 30 days after the notice letter was due, the termination related back to the date of his lay-off, which was March 26, 1984. Thus, at the time he alleges he should have been called in, if even for a day to avoid a break in service, his employment had already been terminated.
 
 IV.
 
 17
 We are not without sympathy for an individual who loses both his employment and his pension because of inadvertent circumstances. On the other hand, we cannot extrapolate a union's inability to save an employee from himself into a breach of fair representation; nor can we turn the company's decision to lay off employees during economic difficulties into an intention to violate ERISA. Because we conclude that the district court did not err by granting summary judgment to the union and the company on the Sec. 301 claim, and that the district court properly concluded that Hendricks had failed to prove an intent on the part of the company to violate Sec. 510 of ERISA, we will affirm the judgments of the district court.
 
 
 
 *
 Honorable Harold A. Ackerman of the United States District Court for the District of New Jersey, sitting by designation
 
 
 [1]
 While the claim of breach of fair representation is addressed to the Union, the Union is generally joined with the employer when plaintiffs bring a Sec. 301 suit since the claim is often tied to a breach of labor contract claim against the employer. Thus, Hendricks' claim that he was improperly terminated alleges a breach of the labor contract, while his claim that the Union failed to fully investigate or forward his grievance alleges a breach of fair representation. See Vaca v. Sipes, 386 U.S. 171, 182-86, 87 S.Ct. 903, 913-15, 17 L.Ed.2d 842 (1967)
 
 
 [2]
 The district court assumed for the purposes of the motion that Hendricks had instituted the first step of the four step grievance procedure when he telephoned LaBella about his failure to be recalled while others with less seniority were returning to work. Step one is an informal procedure, however, the remaining three steps all require written grievance
 
 
 [3]
 Indeed, the district court noted that, in retrospect, Hendricks had failed to make a prima facie case at the summary judgment stage. We can understand the district court's reluctance to terminate a suit before giving the plaintiff ample opportunity to present his case where an interest as important as a pension is at stake