OPINION OF THE COURT
CHAGARES, Circuit Judge.
Plaintiffs John Ducaji, Douglas Ford, Michael Mann, Richard Parker, John Ward, and Kenneth Wilson brought this action against their former employer, Cer-tainTeed Corporation, alleging intentional deprivation of benefits, in violation of the Employee Retirement Income Security Act (“ERISA”), section 510, 29 U.S.C. § 1140, and for breach of contract. The District Court granted summary judgment for CertainTeed, and plaintiffs appeal. We will affirm.
I.
Because we write solely for the benefit of the parties, we will only briefly recite the essential facts.
Plaintiffs were terminated as a result of ongoing expense report audits conducted *258 by Saint-Gobain Corporation (“Saint-Go-bain”), CertainTeed’s parent corporation. Five of the six plaintiffs were salesmen or sales managers in CertainTeed’s Insulation Group, while the sixth plaintiff, Michael Mann, was employed in CertainTeed’s Roofing Products Group. CertainTeed terminated each of the plaintiffs “for cause” after an audit of expense reports over time revealed patterns of unexplained irregularities, or “red flags,” in violation of Saint-Gobain’s Travel and Entertainment Expense Policy and Code of Ethics.
Plaintiffs filed this action on June 9, 2004, alleging that CertainTeed terminated their employment in an effort to interfere intentionally with their receipt of protected pension and welfare benefits in violation of § 510 and alleging breach of contract for failing to pay bonuses to them. On October 20, 2006, CertainTeed moved for summary judgment, and on December 28, 2007, 2007 WL 4570928, the District Court granted CertainTeed’s motion. The court concluded that plaintiffs were unable to establish a prima facie case that Certain-Teed terminated plaintiffs with the specific intent to interfere with their right to obtain benefits protected under ERISA, and that there was no evidence that Certain-Teed’s legitimate, nondiscriminatory reason for terminating plaintiffs was mere pretext. The court further found that plaintiffs’ breach of contract claim failed because they were fired “for cause,” and the governing bonus plans did not require the payment of bonuses under those circumstances. On appeal, plaintiffs contend that genuine issues of material fact make summary judgment inappropriate here. The District Court had jurisdiction pursuant to 28 U.S.C. § 1331 and § 1367. We have jurisdiction pursuant to 28 U.S.C. § 1291.
II.
A court may grant summary judgment if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The court must view all evidence, and draw all inferences therefrom, in the light most favorable to the nonmoving party. See, e.g., Jakimas v. Hoffmann-La Roche, Inc., 485 F.3d 770, 777 (3d Cir.2007). However, the non-moving party must present more than a mere scintilla of evidence; “there must be evidence on which the jury could reasonably find for the [nonmovant].” Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Our review of the District Court’s grant of summary judgment is plenary. Id.
A.
Plaintiffs challenge the District Court’s conclusion that no genuine issue of material fact exists with respect to whether CertainTeed violated § 510. In Gavalik v. Continental Can Co., 812 F.2d 834 (3d Cir.1987), we explained that a plaintiff does not have to prove that the only reason for termination was an intent to interfere with pension benefits. Id. at 851-52. However, to recover, a plaintiff must show that the defendant had the “specific intent” to violate § 510. DiFederico v. Rolm Co., 201 F.3d 200, 204-05 (3d Cir. 2000); Dewitt v. Penn-Del Directory Corp., 106 F.3d 514, 522 (3d Cir.1997). This requires the plaintiff to show that “the employer made a conscious decision to interfere with the employee’s attainment of pension eligibility or additional benefits.” Dewitt, 106 F.3d at 522. “Proof that the plaintiff lost benefits because of termination alone is not enough” to show specific intent. Jakimas, 485 F.3d *259 at 785. In addition, “[pjroof that the termination pi’evented the employee from accruing additional benefits through more years of service alone is not probative of intent.” Id. (citing Turner v. Schering-Plough Corp., 901 F.2d 335, 348 (3d Cir. 1990)). Rather, an employee must offer “some additional evidence” suggesting that interference with ERISA benefits was a “motivating factor” in the employer’s decision. Id.
“The plaintiff may use both direct and circumstantial evidence to establish specific intent, but when the plaintiff offers no direct evidence that a violation of § 510 has occurred, the court applies a shifting burden analysis, similar to that applied in Title VII employment discrimination claims.” DiFederico, 201 F.3d at 205. Plaintiffs here do not offer any direct evidence that CertainTeed specifically intended to interfere with their attainment of ERISA benefits, but instead rely upon circumstantial evidence.
To establish a prima facie case of specific intent using circumstantial evidence, plaintiff must show “(1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled.” Id. at 205 (quoting Gavalik, 812 F.2d at 852). If successful in demonstrating a prima facie case, the burden shifts to the employer, “who must articulate a legitimate, nondiscriminatory reason for the prohibited conduct.” DiFederico, 201 F.3d at 205. The burden then returns to the plaintiff, who “must persuade the court by the preponderance of the evidence that the employer’s legitimate reason is pretexual.” Id. “The pretext analysis focuses the court’s attention on whether the defendant’s proffered reason was the real reason for its decision.” Jakimas, 485 F.3d at 786. To meet this burden, plaintiffs must either “persuade the court that the discriminatory reason more likely motivated the employer” or persuade the court that “the employer’s proffered explanation is unworthy of credence.” Id.
After presentation of the evidence, the District Court concluded that plaintiffs had not established a prima facie case. The District Court further held that, even if plaintiffs had established a prima facie case, their claims fail under the burden-shifting analysis because defendant had articulated a legitimate, nondiscriminatory reason for the terminations, and plaintiffs could not meet their burden to demonstrate that defendant’s reason was pretex-ual.
We agree with the District Court that summary judgment was proper regarding plaintiffs’ § 510 claims. Even if plaintiffs had made out a prima facie case of a § 510 violation, CertainTeed articulated a legitimate, nondiscriminatory reason for terminating plaintiffs’ employment, namely, patterns of expenses in them business-related travel and entertainment (T&E) expense reports indicating violations of company policy and ethical codes. The plaintiffs, in turn, failed to show that the stated reason was pretexual and that CertainTeed’s real reason was unlawful.
Plaintiffs point to evidence that Certain-Teed benefited by saving significant costs associated with plaintiffs’ loss of ERISA benefits and to evidence that CertainTeed was “downsizing” and, in fact, failed to fill plaintiffs’ positions with new hires. Plaintiffs further allege a number of flaws in CertainTeed’s audit and argue that “the Lower Court was required to take the inquiry a step further” to determine whether the employer “manufactured expense report violations to avoid the costs associated with layoffs or terminations without cause.”
Plaintiffs must “demonstrate such weaknesses, implausibilities, inconsistencies, in- *260 coherences, or contradictions in the employer’s proffered legitimate reasons for its action” to create a genuine issues of material fact as to whether the proffered reasons for termination were pretextual. Jakimas, 485 F.3d at 788. Plaintiffs’ bald argument that “the Employer enjoyed a significant cost savings by avoiding the payment of severance and incentive plan benefits” is insufficient to meet their burden.[1]
The remaining circumstantial evidence cited by plaintiffs is both too general and attenuated to sustain their burden. Plaintiffs point to testimony from Vice President and General Manager Jeff Templeton and Vice President David Boivin that customers in CertainTeed’s industry have been consolidating for “the last 10 or 15 years,” leading to an attendant contraction in sales staff during that period. Plaintiffs contend that the terminations resulting from the 2003 audit were a reflection and continuation of “the downsizing and reorganization efforts.” Even if this argument is accepted, plaintiffs must still show that defendants were motivated by the prohibited purpose. When an employer acts without specific intent to interfere with protected rights “as could be the case when making fundamental business decisions, such actions are not barred by § 510.” Inter-Modal Rail Employees Ass’n v. Atchison, Topeka & Santa Fe Ry. Co., 520 U.S. 510, 516, 117 S.Ct. 1513, 137 L.Ed.2d 763 (1997). In any event, the record is devoid of evidence that the T&E audit resulted in any significant workforce reduction at CertainTeed.
B.
In the alternative, plaintiffs argue that the Performance Incentive Plan “created contract terms,” and that Certain-Teed breached those terms when it failed to pay plaintiffs their year-end bonuses upon termination. Plaintiffs argue that, because there were no terminations “for cause,” CertainTeed was required, under the express language of the plan, to pay plaintiffs their year-end benefits. The District Court granted summary judgment on this claim, having found that plaintiffs failed to produce any competent evidence either that their terminations were not for cause or of pretext. We agree, and conclude that plaintiffs have failed to demonstrate that CertainTeed breached the terms of any benefits plan or contract with plaintiffs.
III.
For the foregoing reasons, we will affirm the judgment of the District Court.

. While economic benefits enjoyed by defendants when pension benefits are cancelled can contribute to evidence of specific intent, that consequence alone does not meet the Gavalik standard. See Turner, 901 F.2d at 348 (stating that, when the only deprivation following termination is of the opportunity to accrue additional benefits through more years of employment, "a prima facie case requires some additional evidence suggesting that pension interference might have been a motivating factor.”); Hendricks v. Edgewater Steel Co., 898 F.2d 385, 389-90 (3d Cir.1990) (holding that an employee’s dismissal, eleven months prior to vesting of pension and other benefits, coupled with evidence that the employer was reducing costs, was insufficient to demonstrate specific intent on the part of the employer to interfere with the attainment of pension eligibility).