NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3886
_____

CHESTER E. CROMWELL,
Appellant

v.

UNITED STEELWORKERS OF AMERICA, AFL-CIO-CLC;
INNOVATIVE COMMUNICATION INL,
d/b/a Innovative Telephone
_____

Appeal from the District Court of the Virgin Islands
(D.C. Civil No. 08-cv-00149)
District Judge: Honorable Curtis V. Gomez
_____

Submitted Under Third Circuit LAR 34.1(a)
April 12, 2011

Before:  SCIRICA, RENDELL and AMBRO, Circuit Judges

(Opinion Filed:  April 12, 2011)
_____

OPINION OF THE COURT
_____

RENDELL, Circuit Judge.

Chester E. Cromwell brought this *pro se* action alleging that Innovation

Communication, Inc. violated the Collective Bargaining Agreement ("CBA") by

suspending and terminating him due to his inability to pass a written certification test to

become a pole climbing instructor, and that the United Steelworkers of America ("the Union") breached its duty of fair representation during, and in the aftermath, of his suspension and termination. The District Court of the Virgin Islands granted summary judgment to both defendants, affirming the decision and award issued by the Arbitrator who, pursuant to the CBA, first heard the case. Cromwell appealed the District Court's ruling. For the reasons set forth below, we will affirm.

Because this case arises under the National Labor Relations Act, 28 U.S.C. § 151, the District Court exercised jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291 to review the District Court's final order. We apply a plenary standard of review to the order granting summary judgment and, in so doing, we apply the same standard as the District Court. *State Auto Prop. & Cas. Ins. Co. v. Pro Design, P.C.*, 566 F.3d 86, 89 (3d Cir. 2009); *Bouriez v. Carnegie Mellon Univ.*, 585 F.3d 765, 770 (3d Cir. 2009) ("Summary judgment is appropriate 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" (*quoting* Fed. R. Civ. P. 56(c)). We review the district court's factual findings for clear error. *Nino v. Jewelry Exch., Inc.*, 609 F.3d 191, 199-200 (3d Cir. 2010).

*Background*

As we write primarily for the parties, we recite only those facts necessary to our analysis. Cromwell was originally hired by Innovative, a Virgin Islands telecommunications and cable television company, in 1999 as a janitor. In 2000, he was

2

promoted to the position of Installer/Repairman. He received some training at the time of his promotion, but he was not trained in pole climbing, one of the essential duties of the Installer/Repairman position. Thus, he was not equipped to perform this portion of his job, as U.S. Occupational Safety and Health Administration ("OSHA") regulations require that all pole climbers receive certification from an individual himself or herself certified in pole climbing instruction.[1]

In 2005, Innovative sent one of its employees, Andrew Remselnik, to Texas A&M University to be certified as a pole climbing instructor. Beginning in January 2006, Remselnik began training and certifying Innovative Installer/Repairmen in pole climbing; the process included classroom training followed by a written test made up of twenty true/false and multiple-choice questions. A grade of 80% was required to pass.

Cromwell underwent pole climbing training and took the test six times between July 3, 2007 and July 5, 2007. He was provided with paid leave time to study throughout the period of training and tests. During one of the tests, due to concern regarding Cromwell's ability to read and write, Cromwell was read the questions by a Union Shop Steward and Remselnik wrote his answers on the test form. Cromwell failed the test each time, including when it was administered orally. Twenty-eight other employees who had been trained by Remselnik took and passed the same test by July 2007.

As a result of his failure to pass the test, Cromwell was suspended for ten days. At the time of his suspension, Innovative offered to return him to his former janitor position,

---

[1] Several company witnesses testified at Cromwell's arbitration hearing that men were climbing poles who were not certified and that Innovative was not in compliance with the OSHA regulations.

but he declined. A suspension hearing was held pursuant to Article XV of the CBA,[2] at which Cromwell was represented by the Local Union President, the Union Shop Steward, and Randolph Allen, a Staff Representative for the Union in St. Thomas. Because Cromwell was not able to provide a plausible explanation at his hearing for his inability to pass the test, Innovative converted his suspension into a termination. Cromwell issued no complaints at this point about the Union's representation during the hearing.

The Union then filed a grievance on Cromwell's behalf, pursuant to Article XVI of the CBA, which sets forth the Grievance Procedure. Innovative denied the grievance, and the Union proceeded to Arbitration. At the arbitration hearing, the Union and Innovative presented exhibits and testimony on the issue of whether Cromwell was terminated for just cause. Cromwell was represented by Frederick Joseph, the Sub-District Director for the International Union, who oversees the Union's activities for all of the Virgin Islands. The Arbitrator denied the Union's grievance, based on its finding that Innovative had just cause for terminating Cromwell; she explained in her Findings that Innovative's requirement that Installer/Repairmen had to pass the pole climbing test

---

[2] Article XV of the CBA provides, in relevant part:

> Section 1. The Company retains the exclusive right to discipline, discharge or suspend an employee for just cause. Written notice of the suspension stating the period of suspension and the reason therefore will be given the employee and the Union not later than the start of employee's next regularly scheduled shift . . . .
> Section 2. During such suspension period, the employee or Union may request and shall be granted a hearing before a representative of the Company with the Local Union Grievance Chairman, Assistant Grievance Committee Chairman or a grievance committee member present. No decision shall be made to discharge an employee pending investigation prior to a hearing with the Union or ten (10) working days, whichever comes first . . . .

was related to the orderly, efficient and safe operation of its business and that it was reasonable for the company to expect its employees to be certified. The Union denied Cromwell's request that the Union appeal the Arbitrator's award.

Cromwell then filed a complaint in the District Court of the Virgin Islands claiming that Innovative violated the CBA in suspending and terminating him and that the Union breached its duty of fair representation in its handling of the arbitration and its refusal to appeal the arbitrator's decision. He asked that the District Court vacate the Arbitrator's award and reinstate him to his installer/repairman position. Both Innovative and United Steelworkers filed motions for summary judgment, which were granted by the District Court. The District Court found that Cromwell's claims against Innovative and the Union constituted a hybrid claim under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and that Cromwell failed to provide evidence that a genuine issue of material fact existed as to either one of his claims.

On appeal, Cromwell again asserts that Innovative violated the CBA and that the Union breached its duty of fair representation. He also claims that Innovative's decision to suspend and terminate him was in retaliation for his filing of two EEOC complaints for harassment and discrimination, an arbitration award against Innovative, and his filing of a breach of fiduciary duty claim against the Union in 2007. Amidst these arguments, he also raises a panoply of poorly articulated claims, including allegations that Innovative and the Union committed fraud and that the District Court erred in not allowing him to amend his complaint. We will not address these other arguments both because they are

raised for the first time on appeal[3] and because minimal factual and legal support make it nearly impossible to discern exactly what Cromwell is arguing.[4]

*Discussion*

The District Court properly treated Cromwell's suit as a "hybrid" action under § 301 of the LMRA. In such an action, "a union member sues his or her employer for breaching its contractual obligations under the collective bargaining agreement and the union for breaching its duty of fair representation." *Beidleman v. Stroh Brewery Co.*, 182 F.3d 225, 236 (3d Cir. 1999). A plaintiff bringing a hybrid claim must prove two essential and "inextricably interdependent" elements: "that the employer breached the collective bargaining agreement in order to prevail on the breach of duty of fair representation claim against the union, and vice versa." *Felice v. Sever*, 985 F.2d 1221, 1226 (3d Cir. 1993).

---

[3] We adhere to the "'well-established principle that it is inappropriate for an appellate court to consider a contention raised on appeal that was not initially presented to the district court.'" *Lloyd v. HOVENSA, LLC*, 369 F.3d 263, 272-73 (3d Cir. 2004) (quoting *In re City of Phila. Litig.*, 158 F.3d 723, 727 (3d Cir. 1998)).

[4] Rule 28(a) of the Federal Rules of Appellate Procedure requires that an appellant's brief include in its argument section "appellant's contentions and reasons for them, with citations to the authorities and parts of the record on which appellant relies." With regard to his vague, diffuse arguments that fall outside his CBA violation, breach of duty of fair representation, and retaliation claims, Cromwell fails to provide adequate contentions, reasoning or citations. Defendant United Steel Workers argues that we should dismiss Cromwell's full appeal on the basis that his briefing fails to comply with Rule 28(a)'s requirements for the headings and content of an appellate brief. Though we note the challenge of culling through Cromwell's legal arguments, we construe pro se filings liberally, *Rencheski v. Williams*, 622 F.3d 315, 337 (3d Cir. 2010), and, accordingly, we will not dismiss all his claims on these grounds. Cromwell has, to some extent, set forth in his brief "contentions and the reasons for them, with citations to the authorities and parts of the record" he relies on, as Rule 28 requires.

We agree with the District Court that Cromwell fails to present a genuine issue of material fact as to whether Innovative breached the CBA. Cromwell's primary argument is that Innovative breached the CBA by unfairly and excessively delaying his training on the fundamentals of pole climbing after he was promoted to the position of Installer/Repairman in 2000. Under Article IX (Seniority), § 7(3)[5] and Article XXI (Training), § 1[6] of the CBA, he posits, Innovative was required to provide him with training in pole climbing within 90 days of his promotion. Though we note, as the Abitrator did, that Cromwell and the other Installer/Repairmen's training was delayed for a long period of time, Cromwell has presented no evidence to establish that this delay was a violation of the CBA. We agree with the District Court's interpretation that the CBA does not set forth a specific time period in which Cromwell had to receive pole climbing training. Article IX's provision for a 90-day probationary period does not

---

[5] Article IX, § 7(3) provides, in pertinent part:
> Employees who are selected by the Company for a promotion pursuant to this Article and are unable to meet the requirements of the position within ninety (90) working days shall be returned to their former position at the applicable rate of pay for that position.

[6] Article XXI, § 1 provides, in pertinent part:
> The company agrees to continue its formal and informal training program as required for its bargaining unit employees and further agrees to explain and review existing programs and keep the Union informed as to the development of new programs.
> All employees hired or promoted shall receive formal and informal training during their initial ninety (90) days. Formal training shall either be classroom or on the job. The extent of the formal training shall be determined by the Company. The Company agrees that all training shall be reasonably job related, and at a level appropriate to the level of the job. It is the goal of the Company and the Union to assure that all employees in a particular job classification with a department learn all phases on the work.

7

require that Innovative provide its employees with all the training necessary to perform their positions within that 90-day period; its focus is on the *employee's* satisfaction of the Company's requirements during that time period, not on what the *employer* must provide in terms of training during that time period. Article XXI requires only that employees receive some kind of training for their positions within 90 days of hiring or promotion. It then goes on to explicitly state that "[t]he extent of . . . training shall be determined by the Company," thus providing the Company with discretion as to precisely what training to provide during the initial 90-day period. Further, other parts of the CBA confirm the broad authority provided to management in conducting the company's affairs.[7] Both the Arbitrator and the District Court found Innovative's training of Cromwell to be consistent with this authority, and we will not disturb that conclusion.

Throughout the fact and argument sections of his brief, Cromwell makes several other allegations of various ways that Innovative breached the CBA. He repeatedly challenges the basis for his termination, alleging that Innovative lacked just cause to terminate him because he did not actually fail the test six times. Since he raises this argument for the first time on appeal, he has waived it. Moreover, even if he had

---

[7] For example, Article I of the CBA, the "Management Rights Provision," provides:
> The Management of the Company and the direction of the working force are vested exclusively with the Company. The Company hereby retains the sole control over all matters concerning the operation, management, and administration of its business, including, but not limited to the administration of its departments and operations, the organizations and methods; of types of work, the assignment of work, the direction of Personnel, decisions on subcontracting, the right to hire, reclassify, transfer, discipline, suspend, separate or pension employees and all functions inherent in the administration and/or management of the business except as expressly limited by the terms of this agreement.

properly raised the issue, his six-time failure of the test was a finding of fact by the District Court, and we have no reason to believe that the District Court clearly erred in making this finding. In addition, Cromwell asserts that Innovative breached the CBA by failing to provide him with a tutor when he initially failed the test.[8] Nowhere does the CBA require the employer to supply such remedial aid. The provision he cites – providing that the Company should continue to offer training programs so that employees know how to use advancing technology – is inapposite.

Cromwell's failure to present any genuine issue of material fact regarding his contention that Innovative breached the CBA in suspending and terminating him is fatal to his § 301 claim. *Felice*, 985 F.2d at 1226. Nonetheless, we note that, even if he could establish a genuine issue as to his CBA claim, his duty of fair representation claim must fail. A breach of the statutory duty of fair representation occurs only when a union's conduct towards a member of the collective bargaining unit is "'arbitrary, discriminatory, or in bad faith.'" *Hendricks v. Edgewater Steel Co.*, 898 F.2d 385, 388 (3d Cir. 1990) (*quoting Vaca v. Sipes*, 386 U.S. 171, 190 (1967)) . "[A] union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness' as to be irrational."

---

[8] Cromwell seems to base this argument on Article XXI (Training), § 2, which is subtitled "Technology," and provides, in pertinent part:
> It is the Company's policy to assure that training is available for its employees so that they may have the opportunity to acquire the knowledge and skills required by the introduction of new technology. The parties recognize that, in some cases, senior employees may lack qualifications or technical skills necessary for a higher or different position. In order to aid senior employees with advancement, the Company will continue to offer training opportunities to include tuition reimbursement, program-learning and other types of training.

*Air Line Pilots Ass'n v. O'Neill,* 499 U.S. 65, 67 (1991) (*quoting Ford Motor Co. v. Huffman,* 345 U.S. 330 (1953) (internal citation omitted)). Further, we have stated that an employee is "subject to the union's discretionary power to settle or even to abandon a grievance, as long as it does not act arbitrarily." *Bazarte v. United Transp. Union*, 429 F.2d 868, 872 (3d Cir. 1970).

The District Court is correct that Cromwell cannot meet the high burden of establishing that the Union's conduct in representing him was arbitrary, discriminatory, or in bad faith. The Union undoubtedly fulfilled its obligation to represent Cromwell by filing a grievance on his behalf, taking the grievance to arbitration, and representing his interests before the Arbitrator. The Supreme Court has said that, in the context of a grievance proceeding, a union may not "arbitrarily ignore a meritorious grievance or process it in a perfunctory fashion," *Vaca*, 386 U.S. at 191, and we have clarified that "[m]ere ineptitude or negligence in the presentation of a grievance by a union has almost uniformly been rejected as the type of conduct intended to be included within the term 'perfunctory.'" *Findley v. Jones Motor Freight, Etc.*, 639 F.2d 953, 960 & n.2 (3d Cir. 1981). Here, the Union diligently pursued Cromwell's claim, far exceeding the low bar of "ineptitude or negligence" that a Union must fall below for a breach of duty of fair representation claim to go forward. Cromwell's conclusory assertions to the contrary – primarily that the Union should have let Randolph Allen, rather than Frederick Joseph, represent him at the Arbitration – do not pass muster. Cromwell provides no support for the proposition that the Union's duty of fair representation includes an obligation to

10

provide him with his first-choice Union representative and no evidence that Joseph, more experienced and senior than Allen, did not competently represent him

Finally, Cromwell's vague allegations of "retaliation," which the District Court did not address, are unsupported by any evidence in the record and do not come close to fulfilling the requirements for a prima facie case of retaliation under Title VII of the Civil Rights Act of 1964. *See Ambramson v. William Patterson Coll.*, 260 F.3d 265, 286 (3d Cir. 2001) ("To advance a prima facie case of retaliation under Title VII . . . , a plaintiff must show that:  (1) the employee engaged in a protected employee activity; (2) the employer took an adverse employment action after or contemporaneous with the employee's protected activity; and (3) a causal link exists between the employee's protected activity and the employer's adverse action.").

*Conclusion*

For the foregoing reasons, we will affirm the District Court's grant of summary judgment to both Innovative and the Union.