**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-1982

_____

NYOKA O. REED,
                                        Appellant

v.

V.I. WATER AND POWER AUTHORITY
_____

On Appeal from the District Court of the Virgin Islands
(No. 3-14-cv-00073)
Chief District Judge:  Hon. Juan R. Sánchez

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
December 10, 2018

Before:  CHAGARES, HARDIMAN, and RESTREPO, <u>Circuit</u> <u>Judges</u>.

(Filed: July 12, 2019)
_____

OPINION*
_____

CHAGARES, <u>Circuit</u> <u>Judge</u>.

Nyoka Reed, a former employee of the Virgin Islands Water and Power Authority

("WAPA"), brings this pro se appeal challenging an order granting WAPA's motion for

_____

* This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

summary judgment and denying her cross-motion for partial summary judgment relating to her claims of age discrimination, failure to abide by an arbitration award, and breach of a collective bargaining agreement ("CBA"). For the reasons set forth below, we will affirm.

## I.

Because we write principally for the parties, we recite only those facts necessary to our decision. Reed began working for WAPA in 1978 or 1979. From January 12, 2004 until September 23, 2013, she was employed as a Senior Cashier under the supervision of Fernando Leonard, the Supervisor of Customer Accounts. During this time, Reed belonged to the Utility Workers Union of America Local 602 (the "Union"), which was a party to a CBA with WAPA. In addition to the CBA, WAPA's Personnel Policy and Procedure Manual ("the Manual") governed the terms of Reed's employment.

Reed alleges that, in 2012 and 2013, WAPA managers "referred to [her] as 'old and slow' and . . . indicated to [her] that it was 'time for her to just go' all in reference to [her] advanced age." Corrected Fourth Am. Compl. ¶ 9. Reed was sixty years old at that time. She testified that Customer Service Manager Monique Simon told her several times in 2012 that she was old and slow, and, in September 2013, said to Reed that she might be experiencing Alzheimer's Disease. Reed also testified that Leonard made a single comment to her regarding her age in 2012, when he told her that "he has a job to do and he has to follow instructions from his superiors. And [Reed is] getting old." WAPA Statement of Undisputed Material Facts ("WAPA SUMF"), Ex. 1, at 74–75. Reed testified that neither Monique Richards (Customer Service Director), nor Denise Nibbs

2

(Human Resources Director), nor Hugo Hodge (Executive Director) made negative statements to her regarding her age.

On August 16, 2013, Reed was processing in-person transactions at a WAPA Customer Service Office. On that date, Reed handled a transaction for $160.89. She does not recall the exact bills that were handed to her, but she recorded receipt of $161.00 in cash and returned eleven cents to the customer. Minutes later, the customer returned to Reed's window and complained that he was missing $100. Reed took the customer's contact information and let him know that he could receive a call from the supervisor at the end of the day or see a supervisor immediately. Moments later, Reed observed the customer speaking with Simon. Simon then approached Reed's station and, along with Leonard, counted the money at the station. Simon also watched a videotape of the transaction, which led her to conclude that the customer handed Reed more than $161.

WAPA then scheduled three hearings to investigate possible violations of the Manual as a result of the incident. Reed attended those hearings with a union representative, Ian Forde (President of the Union). Leonard, Richards, Nibbs, and Simon also participated in different hearings. On September 23, 2013, Hodge informed Reed by letter of WAPA's finding that she received $261, rather than $161, during the transaction, and that she was terminated for violating the Manual. The Union filed a grievance, resulting in a hearing involving Reed, Forde, Hodge, and Nibbs. Thereafter, Hodge informed Reed by letter on October 28, 2013 that her termination was upheld. No reference to Reed's age was made in her termination letter, during the grievance hearing, or in the letter upholding her termination.

The Union subsequently demanded arbitration on Reed's behalf, which she attended on January 28, 2014, represented by counsel retained by the Union. On March 25, 2014, the arbitrator issued a decision upholding the Union's grievance, finding that WAPA had failed to "present clear and convincing evidence that Ms. Reed was justly terminated." WAPA SUMF ¶¶ 115, 116. According to the CBA, arbitration decisions are final and binding upon the parties.

Thereafter, Forde inquired of WAPA when Reed would be reinstated and requested "a detailed breakdown of loss of wages including all benefits from the date of termination to present." Id. Ex. 2, at 106–07. WAPA then sent Reed a letter informing her that she would be reinstated effective April 22, 2014. After Reed's reinstatement, Forde stated to WAPA that "the reinstatement date should reflect" the date of the Union's successful grievance (September 25, 2013), and that, as a result, "Reed should be entitled to back pay and all other benefits from said date." Id. at 106. WAPA disagreed, noting in an e-mail that the Union never "raised issues pertaining to Ms. Reed's reinstatement date or back pay" during the disciplinary hearings, and that the arbitration award did not require reinstatement "to a date prior to the award" or "any form of back pay." Id. at 105. Forde did not institute any grievances after that e-mail.

Reed claims that although she was reinstated as a Senior Cashier, she was reassigned to different duties, such as sorting mail and making night deposits. Reed retired in November 2015.

Reed filed a pro se complaint against WAPA in 2014. After obtaining counsel, Reed filed a Fourth Amended Complaint in 2016, which alleged that WAPA:

4

discriminated against her because of her age and her "participation in administrative grievance proceedings" (count one), see Corrected Fourth Am. Compl. ¶ 32; breached the CBA by not providing Reed certain benefits before and after her reinstatement, and did not honor the arbitration award (count two); and defamed her by accusing her of theft (count three). WAPA moved for summary judgment, and Reed cross-moved for summary judgment on count two. In the briefing on the motions, Reed, through counsel, withdrew her retaliation and defamation claims, conceding that she failed to meet her burden on those claims. After oral argument on the motions, the District Court granted WAPA's motion and denied Reed's.

Preliminarily, the court did not consider Reed's retaliation and defamation claims, as they had been withdrawn.[1] It granted summary judgment for WAPA as to Reed's age discrimination claim for failure to establish a prima facie case. The District Court then denied Reed's cross-motion for summary judgment, and granted WAPA's motion, on count two. It concluded, first, that WAPA complied with the arbitration award, which made no mention of back pay. Second, it held that Reed's contract claim failed because she did not exhaust the CBA grievance procedures before filing suit, nor did Reed

---

[1] Reed's brief before this Court does not seriously present argument as to these claims. It appears to challenge the District Court's conclusion that Reed failed to establish a retaliation claim, but the court did not make such a determination — it did not pass upon the claim at all. And the only reference to Reed's defamation claim in her brief is in her concluding sentence, where she requests damages for defamation. As those claims have been withdrawn by Reed's counsel, this Court declines to consider them now. See Link v. Wabash R. Co., 370 U.S. 626, 633–34 (1962) (explaining that parties are "bound by the acts of [their] lawyer-agent[s]," whom they voluntarily chose as their representatives).

5

establish that she was excused from complying with the CBA because the Union breached its duty of fair representation to her or because compliance would have been futile.

Reed, proceeding pro se, now appeals. Construing her arguments liberally, cf. Zilich v. Lucht, 981 F.2d 694, 694 (3d Cir. 1992), we discern two challenges: first, whether the court erred when it concluded that she failed to establish a prima facie case of age discrimination; second, whether the court incorrectly ruled against Reed on her claims relating to the CBA and the arbitration award.

II.

The District Court had jurisdiction under 28 U.S.C. § 1331, and we have appellate jurisdiction under 28 U.S.C. § 1291. Our review of the disposition of motions for summary judgment is de novo, Curley v. Klem, 298 F.3d 271, 276 (3d Cir. 2002), and we "view[] the facts and inferences from them in the light most favorable to" the non-movant, Crissman v. Dover Downs Entm't Inc., 289 F.3d 231, 233 (3d Cir. 2002). Summary judgment is warranted if the movant demonstrates "that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The standard of review applicable to cross-motions for summary judgment is no different, requiring this Court to assess "each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." Auto-Owners Ins. Co. v. Stevens & Ricci Inc., 835 F.3d 388, 402 (3d Cir. 2016) (quoting 10A Charles Alan Wright et al., Federal Practice & Procedure § 2720 (3d ed. 2016)).

6

III.

A.

Reed's count one is brought pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., which prohibits terminating a person's employment due to her age, id. § 623(a)(1). To establish a prima facie case of age discrimination, Reed must demonstrate: (1) that she is at least 40 years old; (2) that she suffered an adverse employment action; (3) that she was qualified for the position of Senior Cashier; and (4) either (a) that she was "replaced by another employee who was sufficiently younger so as to support an inference of a discriminatory motive" or (b) "facts which 'if otherwise unexplained, are more likely than not based on the consideration of impermissible factors.'" Willis v. UPMC Children's Hosp. of Pittsburgh, 808 F.3d 638, 644 (3d Cir. 2015) (quoting Pivirotto v. Innovative Sys., Inc., 191 F.3d 344, 352 (3d Cir. 1999)). At bottom, though, Reed "must prove that age was the 'but-for' cause of the employer's adverse decision." Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 176 (2009). These elements apply to Reed's ADEA claims premised on both her termination and alleged demotion.

We agree with the District Court that Reed failed to establish a prima facie case of age discrimination. As to her termination claim, Reed failed to present evidence that anyone, let alone someone sufficiently younger than her, stepped into the position of Senior Cashier when she was terminated. Willis, 808 F.3d at 644. Nor did she provide facts that permitted an inference that she was discharged because of her age. Id. at 645. The lone comment by Leonard in 2012 and Simon's comments in 2012 and 2013 fail to

7

demonstrate that Reed's termination was based on an impermissible consideration, particularly because neither Leonard nor Simon made the decision to terminate Reed. See Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 545 (3d Cir. 1992) ("Stray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision."). Hodge signed Reed's termination letter and the letter upholding her discharge, and he did not indicate, in either letter or during the grievance hearing, that Reed's age played a role in her discharge.

We also agree that Reed failed to establish a prima facie claim based on her alleged demotion. Reed argued that upon her reinstatement, she was reassigned to sorting mail and making night deposits rather than "resuming her duties as the Senior Cashier." Reed Br. in Opp'n to WAPA's Mot. Summ. J. 3. She further contended that the evidence permitted a conclusion "that the decision to demote Reed without changing her salary was motivated by her age." Id. at 4. But, even assuming that Reed was de facto demoted and that this demotion constituted an adverse employment action, the only evidence of comments or actions by WAPA employees relating to Reed's age were those stray remarks by Leonard and Simon, which were temporally remote and unrelated to the purported demotion.

Finally, Reed argues that WAPA did not have a procedure to address claims of age discrimination and that she exhausted all avenues for resolving her grievance regarding her termination. Those arguments do not change our analysis or conclusion. First, contrary to Reed's assertion, the CBA does provide a procedure for handling non-

8

discipline grievances, such as claims of age discrimination. Indeed, Reed included those very provisions in her statement of undisputed material facts. Second, the District Court's finding regarding Reed's failure to exhaust concerned her breach of contract claim, not her ADEA claims. In any event, neither the existence of a procedure to complain of age discrimination nor the exhaustion of CBA grievance procedures as to Reed's termination changes the fact that Reed failed to establish a prima facie case of age discrimination.

B.

Reed also challenges the disposition of the cross-motions for summary judgment on her claim that WAPA breached the CBA and failed to abide by the arbitration award. According to the Fourth Amended Complaint and the briefing before the District Court, Reed's argument appears to be that the Union requested that she be reinstated as of September 2013, entitling her to back pay and benefits from that time. The failure to so reinstate Reed and to make those payments, she claims, amounts to noncompliance with the arbitration award. Reed also alleges that, following her reinstatement, WAPA failed to pay into certain accounts and precluded her from participating in its Donated Leave Program, in breach of the CBA.

We agree with the District Court that Reed's claims fail. First, none of the evidence to which Reed pointed supports her assertions that the Union requested back pay and back contributions, or reinstatement to a particular date, or that the arbitrator found that she was entitled to those remedies. Indeed, the record reflects that it was only after the final and binding arbitration that Forde relayed to WAPA the Union's position

that Reed should have been reinstated to September 25, 2013 and that she was entitled to back pay and benefits.  The arbitration award itself is silent as to any monetary award, and Reed does not point us to any support, legal or otherwise, that an award of reinstatement must include an award of back pay.  Accordingly, Reed has not established WAPA's noncompliance with the arbitration award.

Next, Reed argues that WAPA breached the CBA by not paying back pay or contributing to certain accounts during her termination, not paying into her retirement personal loan account before and after her reinstatement, and not permitting her to participate in the Donated Leave Program.  To prevail on her claim, Reed must have complied with the grievance procedure set forth in the CBA.  See Manning v. Bouton, 678 F.2d 13, 16 (3d Cir. 1982) ("Being bound by the collective bargaining agreement, [the employee] was not free to ignore the procedures it specifies for the pressing of grievances by bringing suit in federal court.").  Reed argues on appeal that she "exhausted every internal and external means of resolving [her] claims/grievance against WAPA."  Reed Br. 2.  Although, in context, this statement appears to challenge the disposition of her ADEA claims rather than her breach of contract claim, this Court considers, and rejects, any assertion of compliance with the grievance procedure as to Reed's breach of contract claim.  Pursuant to the CBA, Reed was required to address her non-discipline grievances with WAPA by notifying her immediate supervisor and thereafter notifying other WAPA officials and proceeding to arbitration, if necessary.  There is no evidence in the record of such notification by either Reed or the Union on her behalf.

10

Moreover, we agree with the District Court's determination that Reed was not excused from the exhaustion requirement due to a breach of the Union's duty of fair representation or the futility of complying with the CBA procedure. To establish that the Union breached its duty of fair representation, Reed must show that the Union discriminated against her, or acted arbitrarily or in bad faith with regard to a grievance. Vaca v. Sipes, 386 U.S. 171, 177, 186 (1967). She failed to do so.

Any claim that the Union breached its duty by not seeking back pay and associated contributions after the arbitration award and after Reed's reinstatement is meritless given the lack of evidence proffered to show bad faith or discrimination. See Anderson v. Am. Fed'n of Teachers, 67 V.I. 777, 787 (2017) (listing "fraud, dishonesty, and other intentionally misleading conduct" as potential demonstrations of bad faith (quoting Spellacy v. Airline Pilots Ass'n-Int'l, 156 F.3d 120, 126 (2d Cir. 1998))); see also id. at 786 (listing "discrimination based on . . . 'constitutionally protected categories'" as potential demonstrations of discrimination (quoting Simo v. Union of Needletrades, Indus. & Textile Emps., Sw. Dist. Council, 322 F.3d 602, 618 (9th Cir. 2003))). Likewise, that the Union did not make demands on these claims after arbitration cannot be considered "arbitrary," given that the arbitration award was final and binding by that time. See id. (defining as arbitrary conduct that "is so far outside a wide range of reasonableness . . . as to be irrational" (alteration in original) (quoting Joseph v. Bureau of Corrections, 54 V.I. 644, 655 (2011))). Reed appears to support her assertion of a breach by noting that she sent a letter to Forde in May 2014 inquiring as to her back pay and that he did not either respond or file a grievance. That does not demonstrate a breach

11

of the Union's duty.  See Hendricks v. Edgewater Steel Co., 898 F.2d 385, 389 (3d Cir. 1990) (holding that employee who "made one telephone call to his union officer and waited for the result of the investigation" and was then told to "forget about" his grievance failed to establish a breach of the duty of fair representation).

In addition, Reed cannot be excused from the exhaustion requirement on her claim of breach due to WAPA's alleged failure to pay into her accounts after her reinstatement or its alleged preclusion of her participation in the Donated Leave Program because she did not provide evidence that she contacted the Union about those claims.  See Seborowski v. Pittsburgh Press Co., 188 F.3d 163, 168 (3d Cir. 1999) (finding breach of duty of fair representation exception to exhaustion requirement unavailable where employees "never even attempted to present their cause to the Union").

Finally, Reed's counsel argued before the District Court that pursuing her claims through the CBA's grievance procedure would have been futile because the arbitration award was final and binding, such that she could not have sought to reopen it to include those requests.  This does not, however, establish the required showing of "futility," particularly where the complained-of arbitration award is the result of Reed having completed the grievance procedure with the help of Union representatives and counsel. Cf. Glover v. St. Louis-S.F. Ry. Co., 393 U.S. 324, 330–31 (1969) (holding, in a case brought under Railway Labor Act, that a "formal effort to pursue contractual or administrative remedies would be absolutely futile" where the employees' union representatives and employer were "acting in concert . . . to set up schemes" to bar employees' promotion based on race); Goclowski v. Penn Cent. Transp. Co., 571 F.2d

12

747, 758 (3d Cir. 1977) (holding, in a case brought under Railway Labor Act, that employees need not exhaust grievance procedure where union officials "notify the members that they are unwilling or unable to offer any relief").[2]

In sum, because Reed failed to establish that she either complied with the grievance procedure set out in the CBA or was excused from that requirement, and because she failed to show that the arbitration award required WAPA to reinstate Reed as of a date prior to April 22, 2014 or provide her back pay, we conclude that the District Court properly denied Reed's cross-motion for summary judgment as to count two and granted WAPA's motion instead.

IV.

For these reasons, we will affirm the judgment of the District Court.

---

[2] We note Reed's contention that her attorney and the District Court denied Forde the opportunity to present evidence of "his requests for [Reed] to obtain [her] specific benefits that WAPA refused and discriminated against [her] to give." Reed Br. 6. As Reed does not provide support for that assertion, and because she is bound by her counsel's strategic choices, Link, 370 U.S. at 633–34, this statement does not affect our analysis or conclusion.

13